Peter J. Notaro, J.
A dispute has arisen between the *440 petitioner (father) and the respondent (mother) over the question of whether their child, age 9, should be taken to religious services by the father on one of his visitation days.
As for the child, the question is not one of freedom of choice of religion since, because of his age, he is incapable of intelligently making the choice. So, as it is in most cases involving children in Family Court situations, the best interests of the child must be the foremost consideration of the court. (See Matter of Bennett v Jeffreys, 40 NY2d 543.)
There are several cases, cited by respondent, which hold that a court should generally not interfere with the religious upbringing of a child, and that the custodial parent’s choice of religion would prevail over the other parent’s choice. (See cases cited herein.) Sound reasoning would dictate that the court is in no position to determine which religion, if any, is "better” for a child.
In the case at bar, the choice presented to the court is one of religious training versus no religion whatsoever. (Cf. People ex rel. Portnoy v Strasser, 303 NY 539.)
In the matter before this court, it is undisputed that the child herein has a religious background and has attended religious services in the past. It is also undisputed that the parties herein agreed, namely in clause Seven of their separation agreement, executed on December 18, 1974, and January 13, 1975, to consult one another and jointly decide all "questions pertaining to the education, health, summer activities and welfare of William”.
Because of the foregoing circumstances, this case falls within Matter of Bennett v Jeffreys (supra) and the "best interests” rule expounded therein. (Cf., also, People ex rel. Sisson v Sisson, 271 NY 285.)
To say that the issue presents a constitutional question in regard to the respondent’s First Amendment right to freedom of religion is not persuasive, since it avoids the further constitutional question of the petitioner’s right to equal protection. (Cf. Stanley v Georgia, 394 US 557.)
The court finds no difficulty in avoiding the above constitutional confrontation, since the parties’ rights, whatever they may be, are subservient to the best interests of the child.
In Matter of Dickens v Ernesto (30 NY2d 61, 64) Chief Judge Fuld recognized that: "Religion has always been a *441 relevant and important, though not controlling, consideration in this State in the placement of children for adoption.”
Although the matter before this court is neither a custody proceeding nor an adoption proceeding, it is the finding of this court that upon the facts and circumstances herein, religion is a relevant and significant matter. It is also the finding of this court that, since the child herein has the religious background he has, it would be against his best interests to deny him an opportunity to continue his church attendance and religious training because of the mere fact that his mother, the custodial parent, has become a nonbeliever of organized religion.
In Matter of Romano v Romano (54 Misc 2d 969, 972), Family Court Judge Jacob T. Zukerman held:
"There is no question that the mother had the right to change her religion * * *
"The question does arise about the effect upon the children of the conflict presented by their continuing to attend Catholic school and being brought up as Catholics in spite of the mother’s difference in religion. The general rule is that the parent having custody will, absent special circumstances, be allowed to raise the children in his or her own religion * * * It is helpful if the child is taught to respect the religious difference of the other parent and to recognize that, regardless of differences, there may be good in the heart and soul and deeds of those who believe differently than we do. This is particularly so where it is one’s mother or father whose faith is different, as is her or his right in our democratic way of life.”
Religion and morality are so closely interwoven in the lives of most people that it is difficult to say whether good moral character could be molded in a child without some religious training. There is no question that the building of moral character is certainly possible without religious beliefs or training. However, in applying the "best interests of the child” test the court should help in leading the child down the path which is most likely to produce the desired result. In this regard the court is quite sure that this child’s interests are better served by allowing him the opportunity to continue in those religious services he has been introduced to and presently attended by him and his father.
In this case, the parties waived their rights to a hearing, and instead submitted the matter to the court upon oral argument only.
*442 The court is not moved by the argument that attendance at religious services with the petitioner would alienate the child against the respondent, merely because she does not believe in organized religion. This alienation might occur if the parties choose to make the child aware of their basic disagreements in this area, so that, therefore, it is suggested they do not. (Cf. Matter of Romano v Romano, supra.)
There will come a time when the infant will be able to choose for himself which, if any, religion he wishes to pursue. Until such time, it is the hope of this court that this decision will help to instill in his mind some of those basic characteristics which we from time to time are proud to say were present in our forefathers, that is, a fear of the Lord and a deep awareness of what is right and wrong.
It is the order of this court, therefore, that the petitioner visit with this child on Sundays from 9 a.m. to 6 p.m.; on Wednesdays from 3 p.m. to 8 p.m.; on alternate holidays; and one week during the summer. (Respondent to be given two weeks’ notice of summer visit.)