212 N.J. Super. 136 (1986)
514 A.2d 81
PIEDAD I. BROWN, A/K/A/ PIEDAD I. SZAKAL, PLAINTIFF,
v.
GABOR M. SZAKAL, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided March 13, 1986.
*137 Michael S. Kopelman, for plaintiff.
Richard J. Abrahamsen, for defendant.
SORKOW, P.J.F.P.
This plenary hearing results from an Appellate Division remand on the issue of modification of visitation provisions in a settlement agreement which was incorporated into a 1981 judgment of divorce. The specific modification sought by plaintiff-mother is a restraint against defendant-father from causing or allowing their children to violate Jewish Sabbath and dietary laws during his visitation with them.
The parties were married for five years. The union produced two daughters, who are now nine and seven years of age. *138 Plaintiff-mother although born to Catholic parents and reared as a Catholic had prior to marrying defendant converted to Judaism. Nevertheless, she participated with him in a Catholic marriage ceremony. The children were baptized into and attended Catholic church services during the marriage and even subsequent to the divorce which was entered on June 15, 1981. In November 1982, when the children were just six and three years of age, plaintiff married an orthodox Jew. The mother then became a practicing observant Jewess adhering to orthodox Jewish law and tradition. From that time until the present she has reared the children according to orthodox Jewish tradition, including attendance at worship services, observance of Jewish dietary laws, Sabbath and holy day rituals and taking religious instruction at their synagogue Hebrew school.
The property settlement agreement which was incorporated into the judgment contained the following provisions with respect to custody and visitation:
1. The Wife shall have custody of the two minor children of the marriage and primary responsibility for their religious upbringing. (emphasis supplied) The parties, however, shall confer together with regard to all important decisions concerning the children's health, welfare and education.
2. The husband shall have the right to the following visitation with the children other than at wife's residence subject to his picking up the children from wife's residence and providing for them during visitation periods and returning them to wife's residence:
a) every Sunday or Saturday from 1:00 p.m. to 7:00 p.m., husband to let wife know by each Wednesday on which day said visitation right is to be exercised with the parties to cooperate so as to avoid scheduling difficulties insofar as practicable.
b) On Tuesdays or Thursdays from 3:00 p.m. to 7:00 p.m. during the school year with additional visitation to be permitted when the children are older, same to be arranged by the parties ...
Defendant, who had temporarily left this country to work in Saudi Arabia in October 1982, first became aware that plaintiff was rearing the children in the Jewish faith in April 1983, when he returned to the United States for a visit with his children. During his then one week presence in New Jersey, he was not permitted to visit with them on the Jewish Sabbath; that is, from sundown Friday through sundown Saturday. Additionally, *139 the children were chastised by the mother for eating non-kosher food while visiting with their father and he was berated by her for permitting them to do so.
On June 1, 1984, this court, inter alia, required the father to comply with the mother's insistence that the children not transgress Jewish dietary or Sabbath constraints during visitation. The Appellate Division remanded and the father, now permanently returned to the United States from Saudi Arabia, seeks to have the court vacate the visitation limitations in the aforementioned order.
It appears that the real issue presented is not modification of visitation but whether a custodial parent may obtain restraints on visitation with this court's participation and approval (a) because of alleged interference by the father with the religious credo and training given to the subject children and (b) when such restrictions would appear to support one religion as against another.
As to the latter issue, the father argues that for this court to require him to obey all Jewish Sabbath and dietary laws while visiting with his children would violate his constitutional rights in that the court as a state entity would be doing an affirmative act in support of an organized religion.
That the First Amendment to the United States Constitution is made applicable to the states through the Fourteenth Amendment has long been settled law. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900 and 84 L.Ed. 1213 (1940). Thus, the citizens of New Jersey are protected from state action prohibiting or compelling the exercise of religion. The New Jersey Constitution (1947), Art. 1, par. 3 recites like protection. State action can be the effort, either affirmative or negative, permissive or prohibitive by the executive, legislative or judicial branches of our government. In re Adoption of E., 59 N.J. 36 (1971). A judicial decision which compels or prohibits an act is "state action." Such state action by a court cannot transgress constitutional protections. Thus, the decisions of this court *140 must neither violate the mother's or the children's constitutional right to religious freedom nor permit the imposition upon the father of the mother's religion which imposition would violate the father's constitutional right of freedom of religion.
The United States Supreme Court has distinguished between the freedom to believe and the freedom to exercise one's own belief pointing out that the former is absolute, the latter is not. The freedom to practice must be weighed against the public welfare. Cantwell, supra, 310 U.S. at 303, 60 S.Ct. 900. This court holds it must also be weighed against an individual's right not to be compelled to abide by the rules of another's religion.
There can be no limitation by any state action on the choice of faith or belief of plaintiff. The decision by this court will not do so. Here the mother has by contract with defendant sole authority to choose the religion of their children. But she cannot, through this court as a state agency, constitutionally impose the practice of her beliefs and those of the children upon her former husband. This court rejects her request to do so for it is that very imposition that our federal and state constitutions prohibit.
Defendant does not denigrate the value of religious education for the children but he does not want to be placed in the role of enforcer of the children's religious instruction in a religion that is not his own and of which he has no knowledge.
Beyond the constitutional issue, the court views the mother's request as a unique condition of visitation. There is no question that the custodial parent here by contract has the right to select the religious upbringing of the child. If there was no contract, such would still be the right of the custodial parent. Boerger v. Boerger, 26 N.J. Super. 90, 101 (Ch.Div. 1953). The courts will not interfere with the selection by the custodial parent on religious training. Wojnarowicz v. Wojnarowicz, 48 N.J. Super. 349, 354 (Ch.Div. 1958); Esposito v. Esposito, 41 N.J. 143, 146 (1963). The policy behind this judicial reluctance *141 to interfere with the religious training of the children is that it is in the best interest and welfare of the children (especially ones that are very young) that the custodial parent be the one to control their religious upbringing. Wojnarowicz v. Wojnarowicz, supra at 354.
To be balanced against that policy is the goal of promoting a strong loving relationship between the children and the non-custodial parent through an appropriate unrestricted visitation schedule. Wagner v. Wagner, 165 N.J. Super. 553, 557 (App. Div. 1979). The matter of parental visitation is not to be considered lightly. The advantages of continuous contact, emotional support, love and affection between children and their estranged parents, particularly with the non-custodial parent cannot be emphasized too strongly.
Unresolved in New Jersey, however, is the conflict between a custodial parent's right to define the religious practice of the child and the right of the non-custodial parent to exercise unrestricted visitation. It is necessary to look beyond our jurisdiction for instruction on this issue. In Ohio, a father's application to restrict the mother's visitation hours so that the father could retain custody on Sunday in order to bring the child to church was denied. The court remained impartial in imposing religious restrictions between the parents in the absence of evidence that the nine year-old son was affected by the conflict. Angel v. Angel, 2 Ohio Op.2d 136, 74 Ohio L.Abs. 531, 140 N.E.2d 86 (C.C. 1956). In Missouri, an appellate court affirmed a judgment denying the custodial parent's petition to limit the non-custodial parent's visitation to just one Sunday a month in order that the children attend church more often. The court was reluctant to decide the merits or validity of conflicting religious differences between the parents. In Re Marriage of Heriford, 586 S.W.2d 769 (Mo. App. 1979). In New York, the Supreme Court found that it would be in the child's best interests for the court not to interfere in matters of religion *142 while the father was exercising his visitation rights. O. v. E., 90 Misc.2d 439, 395 N.Y.S.2d 351 (1977).
However, some jurisdictions have placed or upheld the placement of religious restrictions upon visitation rights of a non-custodial parent where there has been a showing that the religious conflicts were emotionally harmful to the children. Lee v. Gebhardt, 173 Mont. 305, 567 P.2d 466 (1977); Morris v. Morris, 271 Pa.Super. 19, 412 A.2d 139 (Super.Ct. 1979); In Re Marriage of Mentry, 142 Cal. App.3d 260, 190 Cal. Rptr. 843 (App.Ct. 1983); Sanborn v. Sanborn, 123 N.H. 740, 465 A.2d 888 (Sup. 1983).
It appears that, absent a showing of emotional or physical harm to the children, courts in other jurisdictions will not impose upon the non-custodial parent the burden of policing the religious instructions of the custodial parent.
The mother offered the testimony of two learned rabbis to prove her cause. Rabbi Isaac Swift established that the children born of a woman converted to Judaism are considered Jewish. He also established the religious education being given to the children and their practice of the religion through attendance at worship services and participation in Hebrew School and holy day activities. Rabbi Zelig Block also testified to the children's religious practices, but in his capacity as a practicing psychologist he also sought to establish that children generally and these children particularly would be confused if caused to be confronted with values that conflict with those taught at home and in their synagogue. The proof offered by the mother and her witnesses was neither sufficiently definitive nor convincingly empirical that the children would be emotionally harmed if they did not strictly adhere to Jewish law when in their father's company.
Thus, the court is confronted with the necessity of striking a delicate balance between the competing interests of divorced *143 parents whose different religions create a controversy over access to their children.
The court notes that our contemporary American society is pluralistic in nature. This means that despite a high degree of cultural integration, indeed, even assimilation, differences continue to exist. Some of the differences are in religion, language, national origin, race, economics and geography. Much of our society is hyphenated. The genius of our society is that there exists a balance between conflicting elements so as not to foster self-interest at the expense of the general common-wealth. So while one may derive political values, language and economic status from the civilization embodied in the state, the ethical and moral values come from that embodied in one's religious heritage. In America, one lives in two different societies simultaneously requiring not only the state but each individual to find the balance point between the aforesaid conflicting elements. Plaintiff created a personal pluralism by leaving the religion of her parents and choosing her present faith. She is twice married  giving her children a natural father and a stepfather. In spite of the foregoing voluntarily obtained dichotomies, the mother would have the children encapsulated and shielded from all alien influences even if those influences are those of the children's natural father. This she would do, so that the children will not waiver or be tempted to waiver from their religious tenets. This she would do, so as to protect them from committing sin by transgressing the dietary laws and the laws of their Sabbath. It is suggested that in doing so, she opts for self interest which here must yield to the welfare of the community generally and the father and the children, particularly. This is the type of circumstance where one's religious practice may be limited by state action. In doing so, this court emphasizes it does not in any way limit one's religious beliefs. Furthermore, it should be noted parenthetically that the children are nine and seven years of age. *144 Both have not reached an age, according to Jewish law, where they could be ecclesiastically culpable for non-observance.
At the same time, the integrity, sincerity and depth of the children's training would lead this court to conclude that being so deeply and strongly grounded in the tenets of their faith, that when they reach the age of mature independent reason they will be sufficiently secure in their custodial parent's religion of choice that they will not misplace the concern of their mother or their rabbis.
In the absence of evidence that non-observance of Jewish law during visits with the father would endanger the children's physical, temporal or religious welfare, this court may not impose upon the father the affirmative obligation of observing the laws of his children's religion when he visits with the children. The court suggests, however, that he would do well to be sensitive to their views so as not to have them see him as a contradiction in their lives but rather to enhance and strengthen his relationship with them and their respect and love for him.
Accordingly, the court vacates paragraph eight of its June 1, 1984 order. It denies the requested restraint because it may not constitutionally issue one on the facts herein. It denies the requested restraint because there has not been a clear and convincing showing, not even a showing by a preponderance of the evidence that the children will be at risk without the requested relief.
The second issue addressed by this court is the vacating of the June 1, 1984 order awarding counsel fees to the plaintiff. Since the counsel fee issue was not raised at the plenary hearing, it is deemed abandoned. Each party therefore will be responsible for their own counsel fees.
Counsel for defendant will submit an order in accordance with the foregoing.