Randy JOHNS *v.* Rachelle (McGilvray) JOHNS

CA 95-92 918 S.W.2d 728

Court of Appeals of Arkansas
En Banc
Opinion delivered April 3, 1996

*Charles P. Allen*, for appellant.

*Ralph C. Murray*, for appellee.

WENDELL L. GRIFFEN, Judge. Randy Johns appeals from the July 8, 1994, order by the Phillips County Chancery Court that he see that his two minor children attend Sunday School and church during his visitation every other weekend. Appellant and appellee were divorced November 10, 1988. The divorce decree awarded appellee permanent custody of the children subject to the reasonable visitation rights of appellant. On December 1, 1993, appellant filed a petition seeking a contempt citation against appellee for allegedly refusing to permit him visitation with the younger of the two children, Ryan Randall Johns. On January 7, 1994, appellee filed a response to that petition and asserted a counterpetition alleging, *inter alia*, that appellant had not complied with prior understandings regarding the children attending religious services during the time that they visited him. The chancellor conducted an evidentiary hearing on April 1, 1994, which resulted in the order to which appellant takes exception, specifically that portion of the order which reads as follows:

> . . . the Defendant, Randy Johns, is hereby Ordered to see that the children attend Sunday School and Church while they are in his custody during his visitation.

Appellant argues that the chancellor abused his discretion in rendering this order because there was, according to appellant, no material change in circumstances which justified an order that he see that the children attend Sunday School or church services. Next appellant contends that the appellee was not ordered to see that the children attend Sunday School or church services while they were in her custody. Finally, appellant argues that although church attendance may well be a positive factor, the constitutional guarantee of freedom of religion found in the First Amendment to the Constitution of the United States means that noncustodial parents may not be compelled to see that their children attend church

services and Sunday School during visitation.

 This appears to be a case of first impression in Arkansas. However, the controlling principles of law that govern child custody and visitation disputes are well settled. Although this court reviews the evidence in appeals from chancery courts *de novo*, the decision of a chancellor is not reversed unless it is shown that it was clearly contrary to a preponderance of the evidence. *Burns* v. *Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993); *Larson* v. *Larson*, 50 Ark. App. 158, 902 S.W.2d 254 (1995); *Thigpen* v. *Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). Special deference is shown to findings and rulings made by chancellors in child-custody matters because of the special care that is required and the unique opportunity of the chancellor to evaluate the evidence and assess the credibility of witnesses. *Larson* v. *Larson, supra*; *Ideker* v. *Short*, 48 Ark. App. 118, 892 S.W.2d 278 (1995). And it is fundamental law in Arkansas that the primary consideration in both custody and visitation cases is the welfare and best interest of the child, with all other considerations being secondary. *Marler* v. *Binkley*, 29 Ark. App. 73, 776 S.W.2d 839 (1989); *Welch* v. *Welch*, 5 Ark. App. 289, 635 S.W.2d 303 (1982).

 After conducting a *de novo* review of the evidence, consistent with the aforementioned principles of law, we conclude that the decision of the chancellor should be affirmed. Although the initial divorce decree and all other orders supplemental to it make no reference to church attendance, the record shows that appellee has been following a consistent course of religious instruction for the children at all relevant times since the divorce occurred. Appellee testified that the children had attended church with her on a regular basis, but that they do not attend church services when they visit appellant. Appellee also testified that when the older child, Casey, did not attend morning church services when she visited appellant,

> . . . it is kind of difficult on Sunday nights, because she is laxed (sic) all day. As they get older, I am concerned about the teenage years, when they start wanting to kind of do what they want to do. I want that to be—you know—in their life when they're little so they won't—you know—depart from that. I think it's very important that they have that in their life.

The chancellor was certainly justified in considering this concern

expressed by the custodial parent about the need for consistency in the church-attendance routine, especially where there was no indication that the routine was in any way detrimental to the health and welfare of the children. *See Clark* v. *Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992).

■ Appellant's argument that the chancellor abused his discretion by ordering appellant, and not appellee, to see that the children attend Sunday School and church services is unpersuasive because appellee testified that she had attended Sunday School and church services with the children for as long as they had been with her. That testimony was consistent and unrebutted. The chancellor had no reason to order the appellee to do what she had already undertaken to do, especially absent any proof that appellee would discontinue that practice. *See McFarland* v. *McFarland*, 318 Ark. 446, 885 S.W.2d 897 (1994).

■ Appellant's freedom-of-religion claim is without merit. The chancellor did not order him to attend religious services, but rather that he see that his children did so in order to maintain consistency in the religious regimen that their mother has set for them. Therefore, no limitation has been placed on appellant's freedom of religion. Because the chancellor's order imposes no duty on him to attend, appellant is free to attend or not attend the services with the children.

■ Appellant also argues that the chancellor's order constitutes an impermissible encroachment on his visitation rights by requiring him to devote part of his visitation time to activities instituted by the custodial parent. We do not agree with that premise. Even if the requirement to see that his children attend Sunday School and worship does inconvenience appellant, that inconvenience does not justify setting aside the chancellor's order when what the chancellor ordered is consistent with the best interest of the children. In visitation issues, the primary consideration is what is in the best interest of the children, not what is most convenient for the parent seeking to exercise visitation rights. Even parents who live with their children endure certain inconveniences and hardships related to the parenting function. The record contains no proof that the inconvenience appellant claims will ensue from complying with the chancellor's order would rise to the level of a deprivation of a protected right. Also, appellant has offered no proof to establish that consistent Sunday School and worship

attendance is contrary to the best interest of the children.

██ We note that there was no evidence disputing the testimony from appellee that appellant's refusal to see that the children attend Sunday School and worship services during his visitation has begun to have undesirable effects on one of the children. Moral instruction is, like every other aspect of education, the result of accumulated and consistent effort over time. Because appellant has the right to visit his children every other week, his refusal to see that they attend Sunday School and worship services would mean they would miss half of the possible opportunities for the moral instruction that their mother has been trying to instill. Although we express neither approval nor disapproval for whatever religious beliefs the children may be learning, the fact remains that appellant offered no alternative method for instructing his children in moral values during the time that they would have otherwise been receiving that instruction through Sunday School and church attendance. Under these circumstances, we find that the chancellor acted within the discretion afforded him in making his order.

We reach our decision mindful that there are numerous situations similar to the one involved in this case where divorced parents may differ concerning the routine that their children should follow. We recognize that the children will necessarily become the objects of those differences in some, if not many, instances, and that it is not possible for appellate courts to craft hard and fast rules in individual cases that will fit every situation. We are sensitive to the unique difficulties that these disputes present for chancellors faced with pleas by parents with many motivating influences and children whose lives will turn on the decisions that are reached. Nevertheless, until controversies of this nature cease it will be necessary for someone to decide them. Chancellors are accorded considerable deference in their decisions concerning these matters precisely because they are, in the vast majority of instances, familiar with the factual background and procedural history of the cases. Their decisions will not be infallible; they are reviewable *de novo* by this court and subject to reconsideration at the trial level upon proof of a change in circumstances. However delicate the area of controversy may be, it is the manifest duty of chancery courts to resolve these disputes, and the fact that their decisions will displease one or even both parties must not become a reason for judicial inertia at times when action is both necessary due to the disputing parents and vital

in order to protect the best interests of the children.

Affirmed.

STROUD, J., joins in this opinion.

PITTMAN, J., concurs.

COOPER, ROGERS and ROBBINS, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the decision reached by the prevailing opinion in the case at bar requiring the noncustodial parent to take the children to church and Sunday School while in his custody during visitation.[1] I do not believe that courts should engage in the enforcing of church attendance, even when it involves minors. "[I]ntervention in matters of religion is a perilous adventure upon which the judiciary should be loath to embark." *Wojnarowicz* v. *Wojnarowicz*, 48 N.J. Super. 349, 354, 137 A.2d 618, 621 (1958).

The First Amendment of the United States Constitution made applicable to the states through the Fourteenth Amendment commands that a state "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *See also* Ark. Const. art. 2, § 24. This language has been interpreted as committing the states to a position of "neutrality" between religions. *Epperson* v. *Arkansas*, 393 U.S. 97 (1968).

Courts in other jurisdictions have refused to enforce orders requiring church attendance on constitutional grounds. The Court in *In re Marriage of Oswald*, 847 P.2d 251 (Colo. App. 1993), in reversing the trial court's order providing for the grandmother to take the children to church on Sundays, stated that "even if the mother was providing no religious instruction for the children, the trial court's order could not stand. Such an attempt to control religious decisions is constitutionally impermissible." 847 P.2d at 253. In *Watts* v. *Watts*, 563 S.W.2d 314 (Tex. Civ. App. 1978), the trial court conditioned the mother's visitation on taking the children to Sunday School and to a church of her choice during visitation. The father contended on appeal that the trial court's

---

[1] It is interesting to note that the prevailing opinion and the order of the trial court did not discuss the fact that the custodial parent is not herself required to take the children to church and Sunday School although she testified that she has regularly done so.

decision did not infringe on any constitutional right of the mother since she was permitted to take the children to any church and was not herself required to attend. The Texas Court of Appeals stated:

> Although this contention may be correct, we are concerned also with the constitutional rights of the children. It is commendable that the trial court wishes to insure proper religious training for the children, but it is conceivable that the children may decide they do not wish to receive religious training. This is a matter which the court should not attempt to control other than by its award of managing and possessory conservatorship. Any order specifically requiring religious observance or religious instruction is contrary to the basic principle embodied in Art. I, § 6, that religion is a matter of private conscience with which the state, by its courts or otherwise, is forbidden to interfere.

563 S.W.2d at 317.

Other courts have refused to impose upon the noncustodial parent the burden of policing the religious instructions of the custodial parent absent a showing of emotional or physical harm to the children. *See Brown* v. *Szakal*, 212 N.J. Super. 136, 514 A.2d 81 (1986) (citations omitted). Courts have refused to restrain the noncustodial parent from exposing the minor child to his or her religious beliefs and practices, absent a clear and affirmative showing that these religious activities will be harmful to the child. *Felton* v. *Felton*, 383 Mass. 232, 418 N.E.2d 606 (1981); *In re Marriage of Murga*, 103 Cal. App. 3d 498, 163 Cal. Rptr. 79 (1980).

The case at bar is analogous to those cases in which there is a conflict between the divorced parents regarding the religious faith and training of the children. *See* Annotation, *Religion as Factor in Child Custody and Visitation Cases*, 22 A.L.R. 4th 971 (1983). In *Munoz* v. *Munoz*, 79 Wash. 2d 810, 489 P.2d 1133 (1971), the Court stated:

> The courts are reluctant * * * to interfere with the religious faith and training of children where the conflicting religious preferences of the parents are in no way detrimental to the welfare of the child. The obvious reason for such a policy of impartiality regarding religious beliefs is that, constitutionally, American courts are forbidden from interfering with religious freedoms or to take steps preferring one relig-

ion over another.

* * *

> Thus, the rule appears to be well established that the courts should maintain an attitude of strict impartiality between religions and should not disqualify any applicant for custody or restrain any person having custody or visitation rights from taking the children to a particular church, except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child.

79 Wash. 2d at 812-13, 489 P.2d at 1135 (citations omitted). This rule has been adopted to protect both parents' rights to expose their children to their religious beliefs. *Pater* v. *Pater*, 63 Ohio St. 3d 393, 588 N.E.2d 794 (1992).

Most disputes involve conflicting religious practices between the divorced parents, however, the same principles have been applied equally when one parent practices no religion. *See Khalsa* v. *Khalsa*, 107 N.M. 31, 751 P.2d 715 (1988); *Robert O.* v. *Judy E.*, 90 Misc. 2d 439, 395 N.Y.S.2d 351 (N.Y. Fam. Ct. 1977). Therefore, courts should not interfere when a parent has chosen not to participate in religious services during visitation with children any more than it should enjoin a parent from attending any particular denomination of religious service without a showing of harm to the welfare of the child to justify this intrusion into a parent's religious freedoms. A parent's rights should not be viewed differently in the event that they choose not to practice any religion or choose not to practice a specific religion on a regular basis.

I strongly believe that our courts should adhere to a policy of impartiality between any particular form of worship or lack of worship and should be reluctant to interfere with the religious faith and training of children. Should intervention be deemed necessary in this sensitive and constitutionally protected area, it should be done so only where there is a clear and affirmative showing of harm to the children and the remedy should be one which results in the least possible intrusion upon the constitutionally protected interests of the parents and children. *SeeLeDoux* v. *LeDoux*, 234 Neb. 479, 452 N.W.2d 1 (1990).

ROBBINS and ROGERS, JJ., join in this dissent.