The Honorable Mark Alan Smith State Representative 506 North West Avenue El Dorado, Arkansas 71730
Dear Representative Smith:
I am writing in response to your request for my opinion on the following questions, which a constituent has reportedly referred to you:
 1. Is it proper for a circuit judge to consider a person's religious beliefs or practices when deciding a child custody case (or any other case, for that matter)?
 2. Is it proper for a circuit judge to cite a person's religious beliefs or practices when rendering a judgment?
Your constituent has apparently posed these two related questions on behalf of an acquaintance who was denied custody of his child in Izard County Circuit Court, reportedly in part because of his religious beliefs and practices.
RESPONSE
Given the factual nature of the issues, I am unauthorized and unequipped to address the disposition of the particular case that gave rise to your request. The trial court's disposition of this case was subject to judicial appeal, which the petitioner apparently failed to pursue, and as an executive officer I must decline as a matter of policy to look behind the trial court's decision. However, I can and will set forth the principles of law applicable to your two general questions. As discussed below, in my opinion, the answer to your first question is "yes," so long as the court considers religious beliefs or practices only in the course of determining what would best serve the interests of the child. Such a limited consideration of religion has been held consistent with the freedom-of-religion guarantees set forth at U.S. Const. amend. 1 and Ark. Const. art. 2, § 24. Needless to say, in conducting this inquiry, the court may not simply define the child's best interests in terms of the content, as opposed to the physical and psychological effects, of a particular system of religious beliefs and practices. With respect to your second question, assuming the court's consideration of religion has been properly circumscribed in the manner discussed in my response to your first question, the court may properly discuss the religious issues that influenced it in rendering judgment.
Question 1: Is it proper for a circuit judge to consider a person'sreligious beliefs or practices when deciding a child custody case (or anyother case, for that matter)?
The First Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment, provides that a state "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Section 24 of article 2 of the Arkansas Constitution similarly guarantees Arkansas citizens freedom of religion. In applying the federal constitutional mandate, the United States Supreme Court has held:
 "A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of `neutrality' toward religion," Committee for Public Ed. Religious Liberty v. Nyquist, 413 U.S. 756, 792-793 (1973), favoring neither one religion over others nor religious adherents collectively over nonadherents. See Epperson v. Arkansas, 393 U.S. 97, 104 (1968).
Board of Education of Kiryas Joel v. Grumet, 512 U.S. 687, 696 (1994).
Notwithstanding this neutrality requirement, courts are not absolutely forbidden to consider matters of religion in making custody decisions. In Annotation, Religion as Factor in Child Custody and Visitation Cases,
22 A.L.R. 4th 971 (1983), the commentator summarized the judicial consensus on this issue as follows:
 While it would presumably be possible to leave the religious factor entirely out of consideration, at least formally, most of the courts have taken the view that while they will adopt an attitude of strict impartiality between religions and will not disqualify any applicant for custody because of the faith he follows . . ., the religious factors involved in an award are a proper matter to be considered by the court in determining what decision is best for the general welfare of the child, temporally considered. . . .
 While the courts will go far in applying this doctrine of religious impartiality, tolerating even the inculcation into the child of doctrines which may be regarded by most citizens as being spiritually or socially objectionable, so long as they are not illegal or secularly immoral . . ., there seems to be no doubt of the power of the court to deny custody, even to a parent, where the practice of the religion by the parent interferes with the ability to give proper care to the child. . . .
* * *
 While the courts generally uphold the custodial parent's right to control the child's religious upbringing (59 Am Jurisprudence 2d, Parent and Child § 22), they have usually refused to deny visitation rights on the ground of claimed interference by the visiting parent with the custodial parent's right of religious control . . ., although in some instances they have placed restrictions on visitation rights. . . .
(Footnote omitted.)
The interplay between the principles of maintaining religious neutrality and serving the best interests of the child was dramatically illustrated in the hotly contested case of Johns v. Johns, 53 Ark. App. 90,918 S.W.2d 728 (1996), in which the Arkansas Court of Appeals, in an evenly split decision, affirmed a chancellor's order that a noncustodial parent "see that the children attend Sunday School and Church while they are in his custody during his visitation." Id. at 92. The court summarized the applicable standard as follows:
 [T]he controlling principles of law that govern child custody and visitation disputes are well-settled. Although this court reviews the evidence in appeals from chancery courts de novo, the decision of a chancellor is not reversed unless it is shown that it was clearly contrary to a preponderance of the evidence. Burns v. Burns, 312 Ark. 61, 847 S.W.2d 23 (1993); Larson v. Larson, 50 Ark. App. 158, 902 S.W.2d 254 (1995); Thigpen v. Carpenter, 21 Ark. App. 194, 730 S.W.2d 510 (1987). Special deference is shown to findings and rulings made by chancellors in child custody matters because of the special care that is required and the unique opportunity of the chancellor to evaluate the evidence and assess the credibility of witnesses. Larson v. Larson, supra; Ideker v. Short, 48 Ark. App. 118, 892 S.W.2d 278
(1995). And it is fundamental law in Arkansas that the primary consideration in both custody and visitation cases is the welfare and best interest of the child, with all other considerations being secondary. Marler v. Binkley, 29 Ark. App. 73, 776 S.W.2d 839 (1989); Welch v. Welch, 5 Ark. App. 289, 635 S.W.2d 303 (1982).
53 Ark. App. at 93. The enhanced degree of deference accorded a judge's decisions in matters involving child custody and visitation was more recently echoed in Brown v. Cleveland, 328 Ark. 73, 77-78, 940 S.W.2d 876
(1997):
 Although we give deference to a chancellor in all chancery cases, "[d]eference to the chancellor is even greater when dealing with child custody." Norwood v. Robinson, 315 Ark. 255, 260, 866 S.W.2d 398, 401
(1993). This court has repeatedly held that "there are no cases in which the superior position, ability, and opportunity to view the parties carry as great a weight as those involving minor children." Id. at 260, 866 S.W.2d at 401.
In an analysis perhaps best described as abbreviated, the court in Johns
offered the following in support of its decision to affirm the chancellor's order conditioning visitation rights on the children's church attendance:
 The chancellor was certainly justified in considering this concern expressed by the custodial parent about the need for consistency in the church attendance routine, especially when there was no indication that the routine was in any way detrimental to the health and welfare of the children. See Clark v. Reiss, 38 Ark. App. 150, 831 S.W.2d 622 (1992).
53 Ark. App. at 93. In a pointed dissent, three of the court's six members addressing the issue objected that "[c]ourts in other jurisdictions have refused to enforce orders requiring church attendance on constitutional grounds." Id. at 96. See, e.g., In re Marriage ofOswald, 847 P.2d 251 (Colo.App. 1993) (reversing order directing grandmother to take children to church); Watts v. Watts, 563 S.W.2d 314
(Tex.Civ.App. 1978) (reversing order conditioning visitation on taking children to Sunday school and to church); Brown v. Szakal, 514 A.2d 81
(1986) (orders directing religious instruction improper unless necessary to avoid emotional or physical harm to the children).
On various other occasions, Arkansas courts have at least mentioned religious beliefs and practices as bearing on custody and visitation determinations. See, e.g., Digby v. Digby, 263 Ark. 813, 567 S.W.2d 290
(father's regular church attendance listed as a factor supporting award of custody); Moore v. Smith, 255 Ark. 249, 499 S.W.2d 634 (1973) (same);Plum v. Plum, 252 Ark. 340, 478 S.W.2d 882 (1972) (noting father's lack of church attendance in reversing custody award); McCullough v.McCullough, 222 Ark. 390, 260 S.W.2d 463 (1953) (noting stability of Christian home in declining to reverse custody award); De Reitmatter v.De Reitmatter, 75 Ark. 193, 87 S.W. 118 (1905) (noting religious household of mother and grandparents in awarding custody); cf. Perry v.Perry, 257 Ark. 237, 515 S.W.2d 640 (1974) (mother's church attendance,inter alia, insufficient evidence of character change to warrant awarding custody). In response to your two general questions, then, it appears clear that a court may consider and mention religious beliefs and practices in deciding child custody cases, although the consideration of religion may only be undertaken in the course of determining the best interests of the child.
Specifically with respect to allegedly harmful religious practices, the dissent in Johns noted:
 Courts have refused to restrain the noncustodial parent from exposing the minor child to his or her religious beliefs and practices, absent a clear and affirmative showing that these religious activities will be harmful to the child. Felton v. Felton, 383 Mass. 232, 418 N.E.2d 606
(1981); In re Marriage of Murga, 103 Cal.App.3d 498, 163 Cal. Rptr. 79
(1980).
53 Ark. App. at 97. As suggested in this passage, although no Arkansas decision appears to have turned directly on a court's determination that a custody applicant's religious practices would be harmful to the children, case law in other jurisdictions strongly supports the conclusion that a court might base its decision on such a finding. See,e.g., Leppert v. Leppert, 519 N.W.2d 287 (N.D. 1994) (holding that in pursuit of the children's best interests, custody of all five children should have been awarded to the father where the mother was a fanatic member of her father's religious cult, which condoned lying to, stealing from and violence against nonmembers); Peterson v. Peterson,474 N.W.2d 862 (Neb. 1991) (where the mother's religiously inspired beliefs regarding corporal punishment threatened the well-being of her children, the court did not violate her First Amendment interests in awarding custody to the father, although the court abused its discretion in forbidding the mother, upon pain of contempt, to comment to her minor children regarding her beliefs); In re Watson, 95 N.Y.S.2d 798 (N.Y. Dom. Rel. Ct. 1950) (upon application of natural father, court did not err in taking supervision of children as "neglected" where mother regarded a self-proclaimed prophet as God, fed the children at sect "banquets" and proposed to place them in a sect "kingdom"); cf. In reMarriage of Dorworth, 33 P.2d 1260 (Colo.App. 2001) (absent a statutorily required finding that a father's conduct physically endangered his daughter or impaired her emotional development, the court erred in restricting the father's attendance of church with his daughter in the possible company of gays or lesbians).
However, as these cases suggest, any determination of whether an applicant's religious practices are pernicious to the welfare of his or her children will necessarily be intensely factual. With respect to the specific incident that gave rise to your request, this office is neither equipped nor authorized to act as a finder of fact. Moreover, a court of competent jurisdiction has reportedly already drawn its conclusions regarding this incident. In recognition of the judiciary's independent constitutional role, it has long been the policy of the Attorney General, as an officer in the executive branch of government, to refrain from rendering opinions on issues that have been judicially resolved or that are subject to judicial appeal. Any dissatisfaction by the applicant with the trial court's decision in this matter should properly have been expressed to an appellate court, not to this office. Accordingly, I must respectfully decline to render an opinion regarding what happened in this particular case.
Question 2: Is it proper for a circuit judge to cite a person's religiousbeliefs or practices when rendering a judgment?
As reflected in my response to your first question, so long as the judge addresses religion only to the extent that it bears on the best interests of the child, he may properly consider and refer to religion in rendering his decision.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh