David Bradley WIREMAN, Appellant,

v.

Lori PERKINS (Formerly Wireman), Appellee.

No. 2006–CA–001981–ME.

Court of Appeals of Kentucky.

July 13, 2007.

Allen McKee Dodd, Louisville, for appellant.

No brief was filed for appellee.

Before ABRAMSON, ACREE, and WINE, Judges.

## OPINION

ABRAMSON, Judge.

David Wireman appeals from July 12, 2006 and September 6, 2006 orders of the Jefferson Family Court denying his motion to modify the visitation schedule according to which he and his ex-wife, Lori Perkins (formerly Wireman), share the parenting of their daughter, J.W. Wireman seeks to have the visitation schedule modified so as to compel Perkins on her visitation weekends to take J.W. to Sunday services at Wireman's church, the Fern Creek Christian Church in Louisville. Wireman contends that the trial court's refusal to incorporate this provision in the visitation schedule was in derogation of his right as J.W.'s sole custodian to determine J.W.'s religious training. We disagree and affirm.

J.W. was born in March 1996 during the parties' nearly five-year marriage, which was dissolved by decree in April 2000. The parties were initially awarded joint custody of J.W. In April 2005, however, following Perkins's 2003 conviction for possession of methamphetamine and her treatment for drug dependency, the family court modified its original decree and awarded sole custody to Wireman, with reasonable visitation to Perkins. When the parties could not agree on a visitation schedule, the family court heard their dispute and in November 2005 entered the schedule at issue in this appeal. Among other provisions, the schedule grants Perkins visitation during the school year on every Wednesday night and every other weekend from Friday afternoon until Monday morning. It is this latter provision that Wireman seeks to have modified. Since November 2005, the parties have been back in court several times, trading allegations of non-compliance with the visitation order and seeking sanctions. It was in that context that Wireman first brought his motion to compel J.W.'s attendance at Fern Creek Christian Church on Sundays during Perkins's visitation time. He contends that the trial court's denial of his motion frustrates his authority as sole custodian. We review the trial court's visitation orders under the abuse of discretion standard. *Wilhelm v. Wilhelm*, 504 S.W.2d 699 (Ky.1973).

Wireman relies upon KRS 403.330, which provides in pertinent part that

[e]xcept as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including h[er] education, health care, and religious training, unless the court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or h[er] emotional development significantly impaired.

As Wireman correctly notes, there is little Kentucky case law construing this statute.[1] In *Wilhelm v. Wilhelm, supra*, the former Court of Appeals overturned a provision of a custody decree that allowed the noncustodian to enroll the children in a parochial school. That provision, the Court ruled, was inconsistent with the custodian's right under KRS 403.330 to determine the children's education and religious training. Wireman contends that Perkins's refusal to require or allow J.W.'s attendance at Fern Creek Christian Church's Sunday worship services on those weekends when Perkins has visitation similarly threatens

---

1. We have found helpful, however, and persuasive Judge Knopf' s dissenting opinion in *Wright v. Walters*, 2005 WL 1490991, 2004– CA–000804–ME, an unpublished opinion of this Court rendered June 24, 2005.

to usurp his rights as custodian. We disagree.

There is a significant difference between parochial school on the one hand, and weekly church service on the other. Whereas the former is clearly the sort of major decision KRS 403.330 reserves for the custodian, permitting the custodian to dictate the latter would unduly interfere with the non-custodian's visitation rights. Most of the courts that have faced similar issues have ruled that statutes like KRS 403.330 must be construed in light of the non-custodian's constitutional rights to express her religion or lack thereof, *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to be meaningfully involved in the upbringing of her child. *Id.; Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The non-custodian is free, these courts have held, to expose the child to the non-custodian's beliefs, provided that the exposure is not substantially likely to result in physical or emotional harm to the child. *Chandler v. Bishop*, 142 N.H. 404, 702 A.2d 813 (1997); *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990); *Funk v. Ossman*, 150 Ariz. 578, 724 P.2d 1247 (1986). *See* George L. Blum, "Religion as Factor in Visitation Cases," 95 A.L.R.5th 533 (2002); Jennifer Ann Drobac, "For the Sake of the Children: Court Consideration of Religion in Child Custody Cases," 50 Stan. L.Rev. 1609 (1998). *Both* parents, in other words, retain rights to convey religious or other fundamental beliefs to their children.

It is true, as Wireman argues, that these potentially conflicting rights will sometimes require accommodation and that accommodation could result in the non-custodian being required to transport the child to religious classes or sacramental preparation chosen by the custodian. In *Zummo v. Zummo, supra,* for example, the court held that a Catholic parent's visitation rights were not unduly burdened by a requirement that he accommodate his children's preparation for bar mitzvah by presenting them at the synagogue for Sunday School during his visitation. As the *Zummo* Court noted, however,

a parent's right to inculcate religious beliefs in his or her child would not provide a compelling reason to justify the denial of the other parent's right to maintain a meaningful parental relationship with his or her children. If the court must choose between meaningful visitation and the full benefits of a desired program of religious indoctrination, the religious indoctrination must yield to the greater interest in preserving the parent-child relationship.

*Id.* at 1158.

In this case, the Jefferson Family Court correctly observed that there is a meaningful difference between temporary religion classes that prepare a child for particular rites and initiations, and regular worship attendance. Requiring the non-custodian to accommodate the former might well be reasonable, because the burden on his or her visitation will not be of long duration and because the instruction is necessary to the child's indoctrination into the custodian's chosen religion. To require accommodation of regular worship services, however, in effect permanently deprives the non-custodian of a significant portion of his or her visitation. Whatever instruction might be missed because of periodic absence from regular worship services, moreover, can usually be made up in some other manner by the custodial parent during his or her time with the child.

Wireman refers us to *Johns v. Johns*, 53 Ark.App. 90, 918 S.W.2d 728 (1996) and *Overman v. Overman*, 497 N.E.2d 618 (Ind.App.1986), in which sister Courts of Appeals upheld orders requiring a non-custodian to present his children at the

custodian's church for worship services (*Johns*) or catechism classes (*Overman*) during his visitation. These cases are distinguishable, but to the extent that they tend to emphasize the custodian's statutory right to determine the child's religious upbringing at the expense of the non-custodian's constitutional right to communicate meaningfully his own beliefs to his children, we find them unpersuasive.

We agree rather with those courts noted above that have construed statutes like KRS 403.330 as according custodians, such as Wireman, the right to make the major decisions affecting the child's education and religious training, but not as authorizing them to interfere permanently or unduly with the non-custodian's visitation. Where, as here, there is no evidence that the child has been or is substantially likely to be injured as a result of the non-custodian's practices, or that indoctrination in the custodian's religion has been frustrated, the non-custodian is not required to give up visitation time to accommodate the custodian's chosen church services. The trial court did not abuse its discretion by not requiring such accommodation here.

▪ Finally, Wireman claims that he was entitled to an evidentiary hearing on his motion. Wireman did not present this church attendance issue at the full evidentiary hearing on visitation in November 2005, however, and he never otherwise requested such a hearing. This issue, therefore, is not preserved. His reliance on KRS 403.330, moreover, is misplaced. That statute provides that the custodian's authority to determine the child's religious upbringing may be limited only upon proof by the non-custodian that the custodian has endangered the child's physical health or threatened the child with significant emotional impairment. Here, however, Perkins has not challenged Wireman's right to take J.W. to Fern Creek Christian

Church. It is Wireman, rather, who seeks to limit Perkins's visitation right. If he wished to present evidence in support of his claim, the burden was on him to request a hearing.

In sum, although KRS 403.330 authorizes Wireman to make the major decisions regarding J.W.'s religious upbringing, that statute does not authorize him to dictate that a substantial portion of Perkin's visitation time be given over to J.W.'s attendance at Wireman's church. The trial court did not abuse its discretion in this case by ruling, in effect, that the religious accommodation sought by Wireman would constitute an unreasonable burden upon Perkins's visitation. Accordingly, we affirm the July 12, 2006 order of the Jefferson Family Court.

ACREE, Judge, concurs.

WINE, Judge, concurs in Result and Reasoning and Files Separate Opinion.

WINE, Judge, concurring.

I concur in the result and reasoning of the majority. However, I am compelled to note that because an evidentiary hearing was not held, the trial court was required to make several assumptions that were not supported by the record. There is no evidence that there are alternative dates for J.W. to "make-up" missed Sunday services while visiting with her mother. Secondly, while the trial court recognizes there is a difference between regular Sunday worship and religious "classes," some churches hold separate Sunday church services for children, more akin to instructional classes than adult worship services. Again, there is nothing in the record to establish the type of services held at Fern Creek Christian Church on Sunday mornings.

Wireman also contests several averments in Perkins's affidavit, yet no reply

or counter-affidavit was filed with the trial court.

There may well be circumstances where a non-custodial parent should be required to transport a child to a particular church or synagogue, however, based on the evidence in this case, those circumstances have not been shown.