**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5360-17T3

MICHELE DILISI,

     Plaintiff-Respondent,

v.

GIOACCHINO DILISI,
a/k/a JACK,

     Defendant-Appellant.

_____

Submitted March 26, 2019 – Decided May 10, 2019

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0314-13.

Gioacchino Dilisi, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

Defendant Gioacchino Dilisi appeals from two Family Part orders precluding him from taking his daughters to church services at a non-Roman Catholic Church during his parenting time.  We reverse.

I

Plaintiff and defendant divorced in August 2014.  In their property settlement agreement (PSA), the parties agreed to "share joint legal custody" of their two daughters (then ages eleven and ten), with plaintiff "designated the Parent of Primary Residence" and defendant "designated the Parent of Alternate Residence."  In addition to weekday parenting time with the children on Thursdays, and alternating Mondays or Fridays, the PSA provided defendant "shall have both . . . children every other weekend."  The PSA also incorporated terms from a court order dated December 4, 2013, which provided, "The parties acknowledge that the children shall be raised in the Roman Catholic faith."

In accordance with this provision, the parties' daughters received their Roman Catholic sacraments.  They were baptized, and received their First Penance and First Communion.  When the motion judge issued the orders now under appeal, the older daughter was preparing for her Confirmation.  The daughters also attend a private Catholic school, with defendant providing one-half of their tuition.  However, for several months prior to the motions under

review, during his parenting time, defendant had both daughters accompany him for Sunday services at Emergence Church, a nondenominational Christian Church in Totowa.

In January 2018, defendant emailed plaintiff multiple times, seeking her permission to take the daughters on vacation during their winter break from school. After plaintiff did not respond to his request, defendant filed a motion to enforce litigant's rights. In response, plaintiff filed a cross-motion containing twenty-one requests for relief, including an order precluding defendant "from taking the girls to a non-Roman Catholic Church." Defendant then filed a motion opposing plaintiff's cross-motion.

On May 2, 2018, the motion judge issued two orders: one granting plaintiff's cross-motion to preclude defendant from taking the daughters to a non-Roman Catholic Church, and the second denying defendant's motion to order plaintiff to refrain from obstructing or criticizing defendant's efforts to take the daughters to the non-denominational church. The second order further stated, "Defendant shall only take the children to a Roman Catholic Church." The judge interpreted the PSA provision "that the children shall be raised in the Roman Catholic faith," as meaning "if anyone's going to take them to church[,] that's the church they have to go to." Defendant now appeals from the May 2

orders, arguing that taking his daughters to a nondenominational Christian church did not violate his acknowledgement "that the children shall be raised in the Roman Catholic faith," and that the orders are otherwise "constitutionally impermissible."

## II

In recognition of their expertise in family members, we accord "great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). The trial court's findings "are binding on appeal when supported by adequate, substantial, [and] credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Absent a contractual mandate, the custodial parent has the right to determine the religious upbringing of his or her children. Feldman v. Feldman, 378 N.J. Super. 83, 91 (App. Div. 2005); Brown v. Szakal, 212 N.J. Super. 136, 140 (Ch. Div. 1986). "[I]t is in the best interest and welfare of the children . . .

4

that the custodial parent be the one to control their religious upbringing." Feldman, 378 N.J. Super. at 92 (quoting Brown, 212 N.J. Super at 140-41).

However, this rule does not prohibit non-custodial parents from taking their children to other religious services or exposing their children to other cultural practices during that parent's visitation time. Feldman, 378 N.J. Super. at 96. In fact, we noted that such a prohibition would violate the constitutional rights of non-custodial parents. Ibid.

In Feldman, the non-custodial mother sought to compel the custodial father, who had been raising their children in the Jewish faith, to enroll their children in Catholic Confraternity of Christian Doctrine (CCD) classes. Id. at 87. The trial court denied this request, concluding it would interfere with the father's right, as the custodial parent, to determine the religious upbringing of the parties' children. Id. at 90. The non-custodial parent appealed and we affirmed, because permitting "the non-custodial parent to formally educate the children in a second religion . . . runs contrary to the right that the primary caretaker has to educate the children in the religion of [that parent's] choice." Id. at 96. However, we clarified that our "decision does not prohibit the mother from taking her children to religious services of her choice during her visitation, which is her constitutional right." Ibid.

In <u>Brown</u>, a divorced couple's PSA designated the Jewish mother the custodial parent and made her responsible for the religious upbringing of the parties' children. 212 N.J. Super. at 138. The mother successfully obtained a trial court order precluding her Catholic ex-husband from feeding the children non-Kosher foods and from violating the Sabbath during his visitation time. <u>Id.</u> at 139. The father appealed and we remanded the case to the Family Part, which vacated its previous order, concluding it could not constitutionally "impose upon the father the affirmative obligation of observing the laws of his children's religion when he visits with the children" absent "evidence that non-observance of Jewish law during visits with the father would endanger the children's physical, temporal or religious welfare." <u>Id.</u> at 144.

The Family Part in <u>Brown</u> emphasized that a "judicial decision which compels or prohibits an act is 'state action'" and "[s]uch state action by a court cannot transgress constitutional protections." <u>Id.</u> at 139. Accordingly, "the decisions of [the Family Part] must neither violate the mother's or the children's constitutional right to religious freedom nor permit the imposition upon the father of the mother's religion which . . . would violate the father's constitutional right of freedom of religion." <u>Id.</u> at 139-40. While the custodial parent's right to control the religious upbringing of her children takes precedence, we cannot

A-5360-17T3

issue an order that unduly limits the secondary caretaker's religious freedom. Id. at 139-40.

Thus, we must determine whether defendant interferes with plaintiff's right as the custodial parent to raise the parties' children in the Roman Catholic faith, when he takes his daughters to a nondenominational Christian Church during his visitation time. If not, the motion judge's order barring defendant from doing so unconstitutionally impinges upon his religious freedom.

The record shows the daughters were baptized, received their First Penance and First Holy Communion, and now attend Catholic school. One year ago, defendant's elder daughter prepared for her Confirmation. The record contains no evidence indicating defendant taking his daughters to a nondenominational Christian Church interfered with plaintiff's right to raise the daughters in the Roman Catholic faith. It is clear that plaintiff is raising the parties' daughters in the Catholic faith and attending non-Catholic Church services with defendant every other Sunday did not hinder plaintiff's ability to determine the daughter's religious upbringing. Therefore, the motion judge's orders unduly restricted defendant's religious freedom without adequate, substantial, or credible evidence to justify such a restriction.

A-5360-17T3

Our reversal here is consistent with <u>Feldman</u> and <u>Brown</u>. Defendant sought to take his children to a nondenominational Christian church every other weekend. He did not attempt to provide his daughters with formal religious instruction in another faith or to disrupt their Catholic education. The trial court's orders essentially imposed upon defendant an affirmative obligation to practice plaintiff's religion because the order left defendant with a Hobson's choice: take the daughters to a Catholic Church or to no church at all. Because no evidence indicates defendant's bi-weekly non-Catholic churchgoing with his daughters interfered with plaintiff's rights as the custodial parent, such an imposition on defendant's religious freedom is impermissible.

As we noted in <u>McCown</u>, "The courts do not choose between religions." 277 N.J. Super. at 219. Nor do we "prevent exposure to competing and pulling religious ideas and rituals." <u>Asch v. Asch</u>, 164 N.J. Super. 499, 505 (App. Div. 1978). We instead "establish secular rules to minimize the conflicting pressures placed on the children and permit them to steer a course between the conflicting views and beliefs of their parents" to effectuate "the legitimate expectations of each of the parents with respect to their children's upbringing" and to ensure the best interest of the children. <u>McCown</u>, 277 N.J. Super. at 219; <u>Asch</u>, 164 N.J. Super. at 505. Furthermore, children should "have the opportunity to participate

in the cultural household routine and religious practices of both parents." McCown, 277 N.J. Super. at 220.

We conclude the orders under review interpreted the language of the parties' PSA too broadly, impermissibly impinging on defendant's religious freedom and unreasonably denying the parties' daughters the opportunity to participate in their father's religious practice.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5360-17T3