## Wanda S. WELCH *v.* William M. WELCH

CA 81-430                                           635 S.W.2d 303

Court of Appeals of Arkansas
Opinion delivered June 30, 1982

*William R. Wilson, Jr., P.A.,* for appellant.

*Johnson & Tarvin,* by: *William E. Johnson,* for appellee.

DONALD L. CORBIN, Judge. The present case was brought by the appellee, seeking a change in the custody of a nine-year-old child and the deletion of child support.

Appellant, the child's mother, counter-claimed for an increase in child support payments. The court continued the custody of the nine-year-old child in her mother and awarded the father visitation from June 5 through August 20 of each year. This appeal is taken only with respect to the portion of the order that denies the mother visitation rights during the summer months. We reverse and remand.

This is a case of first impression. Generally, where the court has granted a nine-month/three-month split custody, the non-custodial parent is awarded visitation rights by the trial court and this award is usually affirmed on appeal with little or no discussion about the visitation privileges. See *Stephenson* v. *Stephenson*, 237 Ark. 724, 375 S.W.2d 659 (1964). The issue on appeal has always been the split custody and not the denial of visitation. *Drewry* v. *Drewry*, 214 Ark. 540, 216 S.W.2d 888 (1949). Whether you call the nine/three split, "custody", "split custody", or "visitation", the effect on a minor child is the same no matter what label is used. In the instant case, this nine-year-old child may not see her mother or her sister for nearly three months out of each and every year. The most common custody arrangement is the placement of the child in the custody of one parent, with visitation granted to the non-custodial parent. In such cases, the general rule on visitation is that where custody is placed with one parent, the other is allowed reasonable visitation. Reasonable visitation is determined by the child's best interest. Some of the factors considered are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or the stability of the parties and the relationship with siblings and other relatives. In the instant case, there were no findings by the trial court concerning his denial of visitation to the mother during the period of extended summer visitation with the father. Although the appellee-father made much-to-do about the appellant-mother working and not being a "full-time mother", there was no evidence that she was anything but a devoted, loving mother who worked so that she could provide for her children.

Doctor Travis Tunnel, a qualified psychologist, who

examined appellant and her daughter prior to the hearing, testified that the child saw her mother as her "primary parent", the person the child looked to for security. When questioned about whether he felt granting custody to the father would be good for the child, Dr. Tunnel responded unconditionally in the negative. The reasons he gave for his opinion were that such a change would be taking the child away from her primary parent and also taking her away from a sister figure with whom the child "had formed a close love tie."

We believe that the trial court's order is manifestly against the best interest and welfare of the child. The courts of Arkansas have long recognized that the best interest of the child is the polestar for making judicial determinations concerning custody and visitation matters. We do not believe the evidence submitted to the trial court substantiates the court's order denying appellant and her daughter the opportunity to see each other for a three-month period. We reverse and remand for the trial court to enter such orders as he deems necessary to provide appellant reasonable visitation privileges during the three-month period the child spends with her father.

Reversed and remanded.

CRACRAFT, J., dissents.

GEORGE K. CRACRAFT, Judge, dissenting. As reluctant as I am to be the sole dissenter in an otherwise unanimous decision, I feel compelled to state in general my reasons for doing so. I do not view this as a case of first impression but merely one which requires the sound exercise of that broad discretion vested in the chancellor. In my judgment the majority is treading within that discretionary area which appellate courts ought not enter lightly. There is no type of case in which the personal observations of the chancellor mean more, nor are his observations from a superior position to judge, more vital. *Holt* v. *Taylor*, 242 Ark. 292, 413 S.W.2d 52 (1967). Cases involving custody and visitation are truly adversary proceedings in which only the child is not represented by an advocate. It has long been the duty of

the chancellor to see that his best interests are protected and to make such discretionary orders as will best foster those interests. Appellate courts should defer to the chancellor's superior position from which he is better able to separate wheat from chaff after hearing, seeing and observing all parties including the child.

In his closing comments the chancellor expressed a strong personal distaste for orders which temporarily isolate a child from one parent or the other, but on finding that the best interests of the child so required he reluctantly did so in this case. His remarks indicate that he had done so only after weighing and considering everything he had seen and heard. A motion to reconsider that order was filed with the court in which all of the arguments advanced here were made to the chancellor. After considering that motion for ten days the chancellor declined to grant it.

What the majority seems to be saying is that as the court gave no specific reason for the restriction on visitation he acted arbitrarily. He was neither asked nor required to record his reasons. It is only where the record demonstrates an abuse of discretion that we should interfere in these cases. My review of the record suggests a number of reasons why he might have reached this conclusion. Not the least of these was the mother's stated preference for a career as opposed to parenthood, her expressed attitude toward visitation of the father, her feeling that she should determine the extent of his visitation and that the father was "getting his money's worth" in visitation. A stronger reason might have been the child's expressed desire to spend more time with her father in the community in which most of her kinsmen resided and in which she had lived all of her life before her mother's recent move to an apartment in Little Rock.

Furthermore the record reflects that this chancellor's experience with these parties and their problems with visitation rights began with the initial divorce proceedings in 1974. In the intervening years the parties have been before him on several occasions seeking modification of decreed visitation rights. We would certainly be justified in assuming that the knowledge this chancellor gained from

seven years experience with these parties and their problems with visitation lend support to his conclusion that his actions were in the best interests of the child. *Holt* v. *Taylor, supra.* While the chancellor did not state in the record what facts and factors led him to that conclusion, I am unwilling to second guess his judgment from our insulated position merely on a printed record.

I respectfully dissent.