Mark WILSON *v.* Deanna WILSON

CA 98-724                                          991 S.W.2d 647

Court of Appeals of Arkansas
Division IV
Opinion delivered June 9, 1999

*Ronald L. Griggs*, for appellant.

*Robert L. Depper, Jr.*, for appellee.

JOSEPHINE LINKER HART, Judge. After the parties' divorce, the chancellor awarded appellee, Deanna Wilson, custody of the parties' two children and allowed appellee to move with the children to California. Appellant, Mark Wilson, argues on appeal that both rulings were clearly against the preponderance of the evidence. We disagree and affirm.

The court reviews chancery cases *de novo* and reverses the findings of the chancellor only if his findings are clearly against the preponderance of the evidence. *Rector v. Rector*, 58 Ark. App. 132, 947 S.W.2d 389 (1997). In deciding which parent should have custody of a child and what is in the best interest of the child, the chancellor has the burden of evaluating the witnesses and their testimony. *Id.*

Appellant and appellee married April 24, 1984, separated September 9, 1996, and divorced in October 1997. During the

marriage, they lived in El Dorado, near appellant's family. After the separation and more than a year before the divorce, appellee, who worked as a travel agent, obtained employment with an agency in Little Rock, and she and her daughters moved to Benton. In June 1997, appellee was laid off from her job for medical reasons, and she remained unemployed at the time of the divorce hearing.

Appellee asserts on appeal that she is the proper custodian for the children because she always has been the primary caretaker for the children. According to her, appellant spent little time with his family, choosing instead to spend his time hunting and going out with friends. When he was home, he separated himself from the family by eating his meals in front of the television instead of joining appellee and the children at the dining table. Appellee related that after the separation, appellant, in the presence of the children, became physically violent toward her and had on several occasions threatened to commit suicide. Further, appellant did not visit his children from Christmas 1996 until appellee took the children to El Dorado during their spring break from school in 1997. During the children's visit, appellant went to Colorado, leaving the children with grandparents. Appellee admitted that on one occasion, she denied visitation to the appellant when he appeared at her home without notice. She testified that appellant refused to pay her child support until he was ordered to do so by the court.

Appellant denied that he had committed any acts of violence or threatened to commit suicide. He asserted that both parties took care of the children and that he had cared for the children during the day when he worked a night shift. He reported that he cooked for the family and took the children hunting with him 50% of the time. He complained appellee denied him visitation with the children unless he paid child support. He disclosed that he made car payments instead of paying child support because the car note was in his name.

In support of the chancellor's award of custody to appellee, the evidence established that appellee is the caretaker of the children and that appellant has separated himself from the lives

of his children. Also, appellant failed to support the children until required to do so by court order some ten months after the separation. Further, appellant failed to visit the children for an extended period of time after the separation. In reviewing this evidence, we cannot say the chancellor's decision was clearly against the preponderance of the evidence.

■ We also conclude that the chancellor's ruling allowing appellee to move the children to California was not clearly against the preponderance of the evidence. Again, the best interest of the child remains the ultimate objective in resolving child custody and related matters. *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994). That determination cannot be made in a vacuum, but requires that the interest of the custodial parent also be taken into account. *Id.* While the court should not interfere with parental visitation for frivolous or inadequate reasons, the opportunity for a better lifestyle for the custodial parent and children should not be forfeited solely to maintain visitation when reasonable alternative visitation is available to the noncustodial parent and the advantages of the move are substantial. *Id.*

■ The custodial parent bears the threshold burden to prove some real advantage to the children and himself or herself in the move. *Id.* Once the custodial parent has met this burden, then the court should consider the following factors: (1) the prospective advantages of the move in terms of its likelihood to improve the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move to determine if the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the noncustodial parent's motives in resisting the removal; and (5) whether there will be a realistic opportunity for visitation that can provide an adequate basis for preserving and fostering the parent relationship with the noncustodial parent if removal is allowed. *Id.*

■ In analyzing the first factor, appellee, who worked during the marriage as a travel agent, had been unemployed since

June 1997. She presented the court with evidence that employment as a travel agent was available in California. Although appellee admitted she wants to be near Gary Mainerich, a man she met through her employment before the separation, this was not the only reason she wanted to move. Appellee intends to continue her career as a travel agent and improve her life and the lives of her children. There was ample evidence supporting the chancellor's conclusion that the relocation presented appellee with the opportunity to improve her finances and the quality of life of herself and the children.

■ As for the second factor, no evidence was presented by appellant that appellee's motive in seeking to move to California was to impede his visitation with the children. After the parties separated, appellee voluntarily drove the children from their home in Benton to El Dorado so they could visit with appellant and his family. In fact, the evidence established that appellant traveled to the children's home in Benton only one time to visit after the separation, and his family never attempted to visit the children at their home in Benton. Further, when appellee took the children to El Dorado during the 1997 spring break from school, appellant left and went to Colorado.

■ Regarding the third factor, appellant acknowledged he is currently visiting with the children every other weekend pursuant to the court's temporary order. There was no evidence that appellee has ever interfered with this court-ordered visitation or any other court order.

■ With respect to the fourth factor, appellant stated he opposes the children moving to California because the children have always been close to his family, the move will separate the children from him and his family, and the move will disrupt the childrens' lives. Appellant claimed appellee's move to Benton disrupted the children's lives, and he would not allow her to do so again. Further, he contends that the move would allow appellee to be near Mainerich.

The children lived in Benton for approximately a year before the divorce, and during that time appellant and his family made little effort to visit the children. Additionally, when appellant's young daughters visit him, he does not awaken them nor have an adult caretaker present when he goes to work, but leaves the children alone in his house. They are alone one and one-half hours each morning before one of his close relatives comes to pick the children up. Furthermore, he presented no evidence that the children's association with Mainerich was harmful in any way. On the contrary, the evidence showed that Mainerich provided financial support for the children when appellant did not.

Regarding the fifth factor, the chancellor properly awarded appellant extended summer and Christmas visitation with the children. He further ordered that the costs of transportation to and from visitation be divided between the parties, and suspended appellant's obligation to pay child support during his summer visitation. The chancellor sought to foster the parental relationship of appellant by allowing the parties to expand visitation, if they so agreed, and by giving him financial relief from child support during visitation.

Giving due regard to the factors presented in *Staab*, we find that the chancellor's decision to allow appellee to move the children to California was not clearly against the preponderance of the evidence.

Affirmed.

JENNINGS and NEAL, JJ., agree.