David L. BROWN *v.* Janet P. BROWN

CA 01-953

68 S.W.3d 316

Court of Appeals of Arkansas
Division I
Opinion delivered February 27, 2002

*Mark S. Carter, P.A.*, by: *Mark S. Carter*, for appellant.

*Hurley & Whitwell.* by: *Stephen E. Whitwell*, for appellee.

ANDREE LAYTON ROAF, Judge. Appellant, David Brown, and appellee, Janet Brown, were divorced in 1993. In 2001, Janet filed a motion for contempt and for an increase in child support. The trial court granted an increase in child support and found David in contempt for failing to provide Janet his income tax returns as required in their divorce decree. On appeal, David argues that the trial court erred in 1) failing to consider certain evidence with regard to the practice of the parties for the payment of their child's medical expenses; 2) finding him in contempt for failing to provide Janet with his 2000 tax return; 3) disallowing certain deductions from his tax return when determining his income for purposes of calculating child support; 4) retroactively increasing child support to a date prior to the filing of Janet's petition; 5)

failing to consider certain evidence in determining that amounts paid by him in excess of his child-support obligation were gifts; 6) determining that corporal punishment is *per se* child abuse under Arkansas law; and 7) increasing his child support when Janet failed to show a change of circumstances by not introducing evidence of his income at the time of the earlier decree setting child support. We agree that the trial court erred with respect to the retroactive increase of support and in determining that corporal punishment is *per se* child abuse in Arkansas and reverse and remand on those points. We affirm the trial court on all remaining points.

Pursuant to the property settlement agreement in the parties' 1993 divorce decree, David was ordered to pay $266 a month in child support. The decree stated that David was to provide Janet with copies of his W-2s, or his tax return if he became self-employed, within thirty days of filing the return. David also agreed to pay one-half of their minor child's medical expenses not covered by insurance and to be responsible for one-half of the insurance premium for the child.

In March 1994, Janet filed a motion for contempt and for an increase in child support. After David did not appear at the hearing, Janet submitted an order to the court that found David in contempt and increased the child support to $307 per month. This order was never signed by the chancery court. Although the child support was not officially increased, the testimony of the parties in this case indicates that David assumed that the child support was raised to $307.

On February 13, 2001, Janet filed another motion for contempt and to increase child support. In her motion, Janet stated that David owed $2,400 in medical expenses for their child and that he had not provided her with copies of his recent tax returns as required by the divorce decree. After a hearing, the trial court found David in contempt for failing to provide Janet with his tax returns until a few days before the hearing. The trial court granted Janet's motion to increase child support and set the child support at $496 per month. The court retroactively increased the child support to January 1, 2001, although the motion for increase was not filed until February 13, 2001. David was given until June 1, 2001, to pay the medical expenses owed to Janet. The court also stated that corporal punishment by a parent is abuse, *per se*, in Arkansas and that David's visitation would cease immediately if the court found out that he had spanked or hit his child. David appeals from this order.

■ ■ In reviewing chancery cases, this court considers the evidence *de novo*, but will not reverse a chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Tucker v. Tucker*, 74 Ark. App. 316, 49 S.W.3d 145 (2001). Where the decision turns on the credibility of interested witnesses, we defer to the superior position of the trial court to judge that credibility. *Norman v. Norman*, 268 Ark. 842, 596 S.W.2d 361 (Ark. App. 1980).

David's first and fifth arguments are essentially the same; that the trial court erred in not considering his Exhibit 1 in finding that the amounts paid by him over the child-support amount were gifts and not agreed-upon payments for his child's medical expenses. Exhibit 1 is a medical bill for the Browns' child from 1993 that was mailed to David from Janet. Attached to the bill was a note from Janet stating, "Please send $45.13 with next child support payment. Don't forget you are to pay me $30.00 per month for Alex's insurance. This can be added to child support payment, too." David testified that, based on the note, he had been overpaying child support to compensate for medical expenses. Because the chancery court's order listed certain exhibits that the court relied on in making its decision and this exhibit was not listed, David contends that the court did not consider this evidence. This argument is without merit.

■ The trial court's order did list certain evidence that it relied on, but it also stated that the decision was based on "other matters before the court." Although David argues that Exhibit 1 establishes an agreement between the parties as to the payment of medical expenses, there was other evidence introduced that does not support this claim. David established the amounts that he had overpaid by introducing canceled checks, showing that the amount he had paid for child support from 1996 until 2000 was more than the $307 per month that he had been paying from 1994 until 1996. The amounts of these checks ranged from $350 to $550. Although David claims that this "agreement" as to the medical bills started with the bill in 1994, the canceled checks indicate that David did not make any extra payments until 1996 and 1997. Janet testified that David agreed to make extra payments for their child's extracurricular activities in 1997, and the timing of the extra payments supports her testimony.

■ Also, David testified that the only other medical bill sent to him by Janet besides the one in 1994 was in January 2000. David's record of his child-support payments, which was introduced at the

hearing, indicates that in addition to a $500 child-support check written in January 2000, he also paid an additional $92.84. David testified that this additional amount was for the medical bill that Janet had sent him. In light of the conflicting evidence, we cannot say that the chancellor's decision in regard to the medical expenses is clearly erroneous.

■ Moreover, it was proper for the court to find that these overpayments were gifts to Janet. As conceded by David, it is well settled that the chancery court is not required to give credit for voluntary expenditures by a parent that are above the child-support amount. *Glover v. Glover*, 268 Ark. 506, 598 S.W.2d 736 (1980); *Stuart v. Stuart*, 46 Ark. App. 259, 878 S.W.2d 785 (1994); *Buckner v. Buckner*, 15 Ark. App. 88, 689 S.W.2d 584 (1985). This is the case because the custodial parent relies on proper compliance with the decree in making arrangements for the child's care. *Glover, supra.* Thus, it was not error for the trial court to refuse to apply these overpayments towards David's medical-expense arrearages.

■ For his second point, David argues that the trial court erred in holding that he was in contempt for failing to provide Janet with his 2000 federal tax return when the contempt hearing was held three days prior to the filing deadline for 2000 taxes. David cites *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995), for the proposition that a person cannot be held in contempt for failing to do something that the court did not order. The divorce decree stated that David was to provide each year's tax return within thirty days of the filing deadline. The hearing in this case was held on April 12, 2001, which was before the April 15 filing deadline in 2001. David is correct in his contention that he cannot be held in contempt for failing to provide his 2000 tax return, and Janet concedes this point. However, the chancery court's contempt order was not based solely on the 2000 tax return. The court found that David had also not provided his 1998 and 1999 tax returns until after Janet filed her motion on February 13, 2001. Thus, it was not error for the court to hold David in contempt for failing to timely provide his 1998 and 1999 tax returns.

David next argues that the trial court erred in disallowing "Schedule C" deductions from his 2000 tax return when determining the amount of future child support. As the chancery court's decision indicates, David was unable to adequately explain many of the deductions contained on his 1998, 1999, and 2000 tax returns. David argues that it was error for the court to impose on him a duty to know what his legitimate business expenses were and to know

what was contained on his tax returns. His argument is without merit.

█ It is the ultimate task of the chancellor to determine the expendable income of a child-support payor. *Stepp v. Gray*, 58 Ark. App. 229, 947 S.W.2d 798 (1997). This court has stated that the chancellor "may not simply utilize one of the definitions of income found in the tax code, particularly in the case of self-employed persons, to arrive at the true disposable income of the support obligor." *Id*. at 235, 947 S.W.2d at 801. It is proper for the chancellor to consider whether a depreciation deduction should be allowed in calculating expendable income. *See id*. at 236, 947 S.W.2d at 801 (discussing appellate cases where a depreciation deduction was properly added back in to the support payor's income in arriving at an accurate indicator of expendable income). The version of the child-support chart applicable when this case was tried is found at *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. 581 (1998).[1] These guidelines provided that for self-employed payors, such as David, the amount of support shall be calculated based on the last year's federal and state income tax returns and the quarterly estimates for the current year. *Id*. The chancellor should also "consider the amount the payor is capable of earning or a net-worth approach based on property, life-style, etc." *Id*.

In her decision, the chancellor conducted a thorough analysis of the evidence relating to David's income and made extensive findings of how she calculated his income for child-support purposes. The chancellor specifically noted that she did not find David's testimony about his financial status to be credible. For instance, in looking at David's affidavit of financial means, the chancellor stated that there was no way that he could support himself and his household expenses on the income that he reported on his affidavit.

Also, in reviewing the 2000 tax return, the chancellor found that David's deductions for his car and truck allowance and his insurance allowance, and another $8,000 deduction that David could not explain, were suspect. In determining the amount of

---

[1] The most recent revision of the child-support guidelines, *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines*, 347 Ark. Appx. ___ (January 31, 2002), became effective on February 11, 2002. This version now provides that for self-employed payors, the amount of support shall be calculated based on the last two years' federal and state income tax returns.

these deductions to allow, the chancellor relied on David's testimony that his expenses went toward himself, his girlfriend, and his business. For example, David's girlfriend had been paying his $1,400 per month mortgage payments and other living expenses and worked at his business, but was not paid by the business. Also, David's business was paying for his car insurance, even though the car was used both for personal and business matters. The personal use by a support obligor of a company car has been held to constitute imputed income. *Weir v. Phillips*, 75 Ark. App. 208, 55 S.W.3d 804 (2001). The chancellor divided the questionable expenses by three and allowed the one-third of those expenses that were directly related to David but not the two-thirds that could have been related to his girlfriend or his business. Because of these calculations, the chancellor imputed $15,996.68 of additional income and came up with a net profit of $45,918.68. The chancellor then looked at all three years of the tax returns and subtracted the average percentage of taxes that were paid, which was approximately 22%. The chancellor found that David had an annual income for child-support purposes of $35,816.58 and a monthly income of $2,984.71.

It was the chancellor's task to arrive at an accurate figure for David's income, and it was not error for the court to expect David to understand and be able to explain his deductions on his tax return. He was the only witness before the court to explain this information. Although David argues that his accountant was the only person who understood this information, his accountant was not present at the hearing to answer these questions, and David provided no alternative to the trial court, nor does he on appeal, to the chancellor's calculations. Consequently, we cannot say that the trial court's method of arriving at David's expendable income was clearly erroneous.

For his fourth point, David argues that the trial court erred in retroactively increasing child support to a date prior to the filing of the motion to increase support. In its order, the chancery court retroactively increased the child support to January 1, 2001; however, Janet did not file her motion to increase support until February 13, 2001. The court stated that it was doing this to partly offset some of the attorney's fees and costs incurred by Janet in bringing the action, as David was in contempt for failing to provide her with his tax returns. We agree that it was error for the court to retroactively increase the child support to a date before February 13.

According to Ark. Code Ann. § 9-14-234 (Repl. 1998), child-support orders cannot be retroactively modified for the time

period before the filing of the petition for modification, and it is an abuse of the chancery court's discretion to do so. *Yell v. Yell*, 56 Ark. App. 176, 939 S.W.2d 860 (1997). The only exception to this rule is where there has been fraud in procuring the existing support decree, or other grounds set forth in Ark. R. Civ. P. 60(c). *Id.* The party seeking to modify the existing decree based on fraud had the burden of showing the fraud by clear, cogent, and convincing evidence. *Grubbs v. Hall*, 67 Ark. App. 329, 999 S.W.2d 693 (1999).

■ Here, the chancery court made no finding that David procured the existing support decree by fraud. Janet argues that it was fraudulent for David to fail to provide her with his tax returns, in that it prevented her from finding out whether his income had increased. However, Janet knew that she was not receiving the tax returns as ordered in the decree. Moreover, there is no evidence that the child–support order contained in the divorce decree was procured by fraud, which must be shown in order to modify the support prior to the time of the filing of the motion to increase, and the trial court abused its discretion in ordering the increase to be retroactive to January 1. We thus reverse and remand for entry of an order correcting the effective date of the increase in support.

■ David next argues that the trial court erred in determining that corporal punishment is *per se* child abuse under Arkansas law. David contends that there is no authority for the chancery court's finding on this point. His contention is correct. Arkansas Code Annotated § 12-12-503(2)(C)(i) (Supp. 2001) states that child abuse "shall not include physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting a child." *See also Sykes v. State*, 57 Ark. App. 5, 940 S.W.2d 888 (1997) (finding that spanking with a telephone cord was not a use of inappropriate and unreasonable physical force in disciplining eleven year-old grandson); *Arkansas Dep't of Human Servs. v. Caldwell*, 39 Ark. App. 14, 832 S.W.2d 510 (1992) (finding that the paddling of students was not abusive even where there was evidence of bruising). Therefore, corporal punishment by a parent is not *per se* child abuse under Arkansas law, and the chancery court's finding to this effect is incorrect.

■ ■ The main consideration for making judicial determinations concerning visitation is the best interest of the child. *Marler v. Binkley*, 29 Ark. App. 73, 776 S.W.2d 839 (1989). During the hearing, Janet raised concerns about the manner in which David was punishing their child. The trial court declined to directly question the child as to this matter, but David admitted in his testimony

that he spanked the child with a sandal and a ping-pong paddle. The trial court found that this type of punishment was "abuse, *per se*, in the State of Arkansas," and forbade David from using corporal punishment during his visitations with the child. Because the trial court misstated the law and failed to determine whether the discipline was "reasonable and moderate" for purposes of restraining or correcting a child, we reverse and remand this issue to the trial court.

For his final argument, David contends that the trial court erred by increasing his child support when Janet failed to meet her burden of showing a change of circumstances due to her failure to introduce evidence of his income at the time of the previous support order. A change of circumstances must be shown before a court can modify a child-support order, and the party seeking modification has the burden of showing a change in circumstances. *Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993). The chancellor's determination as to whether there are sufficient changed circumstances to warrant an increase in child support is a finding of fact and will not be reversed unless it is clearly erroneous. *Id.*

David relies on *Ritchey v. Frazier*, 57 Ark. App. 92, 940 S.W.2d 892 (1997), for the proposition that absent evidence as to the basis for the original child-support payment, such as the payor's income, there can be no showing of a change of circumstances. David's argument is misplaced. The statute upon which *Ritchey, supra*, is based has three subsections. Arkansas Code Annotated § 9-14-107 (Repl. 1998) provides an additional basis upon which a party can petition the court for review and adjustment of the amount of the child-support obligation. Section 9-14-107(a), referred to in *Ritchey, supra*, provides that a change in the gross income of the payor by more than twenty-percent, or more than $100 per month, is a material change in circumstances sufficient to petition the court for review. However, there is another subsection that is applicable here. Section 9-14-107(c) states that "an inconsistency between the existent child-support award and the amount of child support that results from application of the family support chart shall constitute a material change in circumstances sufficient to petition the court for review and adjustment." This subsection further provides that the amount of inconsistency referred to is more than twenty-percent or more than $100 per month, as in subsection (a). In *Tucker v. Tucker*, 74 Ark. App. 316, 49 S.W.3d 145 (2001), the appellant made an identical argument, and this court found that section 9-14-107(c)

was applicable where there was an inconsistency between the original child-support award of $40 per week and the $138 per week that resulted from application of the family support chart.

The chancellor found David's income to be $2,984.71 per month, from which child support was set at $496 per month. In 1993, David's child support was set at $266 per month. This inconsistency is clearly more than the twenty-percent or $100 per month quantitative standard set forth in the statute. Thus, because section 9-14-107(c) applies in this case, the chancellor did not err in finding a change of circumstances sufficient to warrant an increase in David's child support.

Affirmed in part; reversed and remanded in part for entry of an order consistent with this opinion with respect to the issues of retroactive support and the prohibition of corporal punishment.

CRABTREE and ROBBINS, JJ., agree.