Judith Rebecca HASS *v.*
Farrell Dewitt HASS, M.D.

CA 02–160                                    97 S.W.3d 424

Court of Appeals of Arkansas
Divisions I, III, and IV
Opinion delivered February 5, 2003

*James M. Pratt, Jr.*, for appellant.

*Everett Law Firm*, by: *Elizabeth E. Storey*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Judith Rebecca Hass, and appellee, Farrell Dewitt Hass, were pre-

viously before this court in *Hass v. Hass*, 74 Ark. App. 49, 44 S.W.3d 773 (2001). Appellant lived in Fayetteville, Arkansas, and had primary custody of the parties' son, Jay, who was born in 1995. She was offered a federal clerkship in El Dorado, Arkansas, upon her graduation from law school. Appellee opposed the relocation and sought custody of the child should appellant decide to relocate to El Dorado. The lower court ruled in favor of the father, but we reversed, allowing the mother to relocate and retain custody of the child. In proceedings following the entry of that opinion, the trial court, *inter alia*, 1) modified the visitation schedule for Jay in light of appellant's relocation to El Dorado, and 2) abated appellee's alimony obligation in light of appellant's employment as a law clerk for a federal judge. Appellant challenges both of those rulings in this appeal. We affirm the revised visitation schedule, but we reverse the ruling that abated alimony and reinstate the original $2500 monthly alimony award.

In reviewing domestic-relations cases, this court considers the evidence *de novo*, but will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). It is well settled that the trial court maintains continuing jurisdiction over visitation and may modify or vacate such orders at any time on a change of circumstances or upon knowledge of facts not known at the time of the initial order. *Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000). It is also well settled under Arkansas law that reversal is warranted where a trial court modifies visitation where no material change in circumstances warrants such a change. *Id.* While visitation is always modifiable, our courts require a more rigid standard for modification than for initial determinations in order to promote stability and continuity for the children, and to discourage repeated litigation of the same issues. *Id.* The party seeking a change in visitation has the burden below to show a material change in circumstances warranting the change in visitation. *Id.* The main consideration in making judicial determinations concerning visitation is the best interest of the child. *Brown v. Brown, supra*. Important factors to be considered in determining reasonable visitation are the wishes of the child, the capacity of the party

desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Marler v. Binkley*, 29 Ark. App. 73, 776 S.W.2d 839 (1989). The fixing of visitation rights is a matter that lies within the sound discretion of the trial court. *Davis v. Davis*, 248 Ark. 195, 451 S.W.2d 214 (1970).

For her first point of appeal, appellant contends that the trial court erred in the manner in which it revised the visitation schedule. Following appellant's relocation to El Dorado, appellee requested that the trial court revise the visitation schedule for Jay. At the hearing on his motion, appellee testified among other things that Wednesday-night visitation with Jay and participation in school lunches and after-school sports were made impossible for him after the move. Following the hearing, the trial court determined that a modification in visitation was necessitated by appellant's relocation to El Dorado, and as part of the modification ordered that it would be revised to have summer visitation with appellee begin one week after school was dismissed in El Dorado for the summer break and end ten days prior to school starting in El Dorado in the fall, with appellant having visitation during the first weekend of July. The court also allowed appellee every spring break and alternate weekends, with the exchange point to be at the Cracker Barrel restaurant in Conway.

Appellant argues that Jay's best interests were not served by the modifications because they, in essence, split Jay in two and require him to straddle two worlds, making two lives for himself — one in the summer and one in the school year. She further contends that the revisions eliminate any flexibility in scheduling summer vacations, allow her less time than standard visitation schedules for noncustodial parents, and create a five- and six-week period in the summer when Jay will only see his mother for the one July weekend that lies between them.

It is clear, and not really disputed, that the relocation to El Dorado constituted a material change in circumstances that justified a modification to the visitation schedule. Moreover, while we might well have restructured visitation differently, particularly

to prevent such long periods in the summer when Jay is away from his mother, we are not convinced that the trial court erred in this regard.

For her second point of appeal, appellant contends that the lower court erred in abating appellee's obligation to pay alimony. We agree.

■ It is undisputed that as part of their original divorce proceedings, the parties agreed that the alimony amount would be modifiable, as if the court had ordered it in the first place, but that the ninety-six months also agreed upon as the term for payment of alimony would not be modifiable. Modification of an award of alimony must be based on a change in the circumstances of the parties. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The burden of showing such a change in circumstances is always upon the party seeking the change in the amount of alimony. *Id.* The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* A finding of changed circumstances warranting the termination of an alimony obligation is a finding of fact that will not be reversed unless clearly erroneous or clearly against the preponderance of the evidence. *Id.*

Here, the parties agreed that appellee would pay appellant $2,500 a month in alimony for a period of ninety-six months. Appellee acknowledged that the alimony amount and the $3000 monthly child-support amount had been set by agreement of the parties, but he stated that they also agreed that those amounts were to be modifiable. He asserts that at the time he agreed to the alimony, he contemplated that appellant would be employed after graduating from law school. He further asserts that their discussions contemplated that she would start her own practice in Fayetteville and that the $51,927 she is currently earning as a federal law clerk "is nowhere close" to what he thought she would be earning when he agreed on the alimony amount. He also testified about his earnings as an anesthesiologist, which apparently range from at least $224,261 to $317,715 a year.

In abating appellant's alimony award, the trial court found that there had been a material change of circumstances because

appellant "is employed as a federal law clerk and is now earning an income which exceeds the defendant's alimony obligation." While a change from unemployment to employment in a $51,927 per year job might well represent a change in circumstances in most cases, it does not represent a change in the circumstances contemplated by these parties at the time of their agreement. The parties clearly contemplated that appellant would become employed during the ninety-six-month period in which they agreed that appellant would receive alimony. Despite appellee's assertion that appellant's $51,927 salary is considerably more than what he thought she would earn, no such provision was included .in their agreement, and he presented no proof of prevailing salary rates in Fayetteville for attorneys in their first years of practice. It is clear that appellee anticipated that appellant would be practicing law the last six years of the agreed eight-year period of alimony.

We find that the trial court was clearly erroneous in abating the alimony under the circumstances presented here. We therefore reverse the trial court's abatement of appellant's alimony and reinstate the original amount of $2500 a month.

Affirmed in part and reversed in part.

ROBBINS, GRIFFEN, NEAL, and VAUGHT, JJ., agree with respect to the issue of visitation.

HART, CRABTREE, BAKER, and ROAF, JJ., dissent with respect to the issue of visitation.

HART, GRIFFEN, NEAL, VAUGHT, and BAKER, JJ., agree to reverse and reinstate with respect to the issue of alimony.

ROBBINS, CRABTREE, and ROAF, JJ., would reverse and remand with respect to the issue of alimony.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand this case on both the issue of abatement of alimony and modification of visitation. With regard to the abatement of alimony, I agree with the majority as to the standard of review and agree that the trial court erred in completely abating the alimony based solely upon the finding that Judith Hass was now earning more through her employment than the amount

of the annual alimony obligation. However, the parties clearly and explicitly agreed that the alimony obligation would be modifiable upon a showing of change of circumstances, "to the same extent it would be had the judge made the decision on alimony without agreement of the parties." While the majority concludes that the parties must have contemplated that Judith Hass would be employed upon graduation from law school, and faults Dr. Hass for failing to present proof of prevailing salary rates in Fayetteville for attorneys entering practice, the fact remains that a substantial change of circumstances was clearly shown. Consequently, I would not simply reinstate the original award, but would remand to the trial court to fully and properly address the issue of alimony, considering all of the changed circumstances, including both parties' increase in income.

With regard to the modified visitation, I must also conclude that the trial court erred in awarding Dr. Hass visitation consisting of virtually all of the child's summer vacation, with the exception of a single July weekend visitation with the child's mother. There is no reason to deprive the child of contact with his mother for such an extended period of time where Dr. Hass will be able to continue his regular weekend visitation. I can find no case that describes such a deprivation except in parental relocation cases where the parties were living at considerable distances from each other such that weekend visitation would be precluded. See *Wagner v. Wagner*, 74 Ark. App. 135, 45 S.W.3d 852 (2001) (affirming order allowing mother to relocate to Florida; father awarded extended summer visitation from one week after school is out through one week before school commences, except for one week during this period for mother's vacation); *Wilson v. Wilson*, 67 Ark. App. 48, 991 S.W.2d 647 (1999) (affirming order allowing mother to relocate to California; extended summer and Christmas visitation awarded to father).

In a North Dakota case involving the custodial parent's relocation out of state, *Tibor v. Tibor*, 623 N.W.2d 12 (N.D. 2001), the custodial parent, the mother, was granted permission to relocate with the parties' children to Georgia. As in the case before us, the mother appealed the trial court's award of extended summer visitation of seven weeks to the father who remained in

North Dakota. In affirming the visitation award, the North Dakota Supreme Court stated:

> We have concluded that a noncustodial parent's right to maintain and develop a relationship with his or her children after removal from the state can be satisfied by modifying the visitation schedule to include less frequent but more extended periods of time. When there is a long distance between the homes of the noncustodial and custodial parents, we have approved visitation schedules providing less frequent, but extended visitation periods to preserve the noncustodial parent's ability to foster relationships with the children. In such circumstances, extended visitation during the summer months may be the only feasible method of facilitating visitation, from the standpoint of transportation and economics. [Citations omitted.]

*Id.* at 16.

Although Dr. Hass will not be able to continue his Wednesday evening visitations with the minor child as a result of the relocation to El Dorado, the extended summer visitation awarded is nearly three months, and is clearly not the only feasible method of facilitating his visitation. There is simply no reason to deprive the child of contact with his mother for such an extended period under the circumstances presented in this case, and where Dr. Hass will continue to exercise his weekend visitation.

Moreover, this court reversed and remanded a case in which the trial court granted "extended visitation" of June 5 through August 20 to the noncustodial father, holding that it was error to deny the mother all visitation rights during the summer months when the child was with the father. *Welch v. Welch*, 5 Ark. App. 289, 635 S.W.2d 303 (1982). This court said that such an order was "manifestly against the best interest and welfare of the child." *Id.* This court further noted that even in cases involving a nine-month/three-month split custody, visitation is awarded during both periods. I cannot say that a single midsummer weekend visit is sufficient to distinguish the extensive visitation awarded Dr. Hass from the facts in *Welch*. Consequently, I would also reverse and remand for the trial court to reconsider the question of summer visitation.

ROBBINS and CRABTREE, JJ., agree with respect to the issue of alimony.

HART, CRABTREE, and BAKER, JJ., agree with respect to the issue of visitation.