James HUEY *v.* Sandra HUEY (SHEIRON)

CA 04-214                                             204 S.W.3d 92

Court of Appeals of Arkansas
Opinion delivered February 23, 2005

*Gibson & Hashem, P.L.C.*, by *C.C. Gibson, III*, for appellant.

*Sara Hartness*, for appellee.

WENDELL L. GRIFFEN, Judge. James Huey appeals from an order reducing the child-support obligation of his former spouse, appellee Sandra Huey, with regard to their daughter, Lauren. Appellee cross-appeals from that portion of the order requiring her to pay child support and to pay one-half of Lauren's health insurance. We hold that appellee demonstrated a sufficient change in circumstances to warrant a modification in child support and that appellee is obligated to pay one-half of Lauren's health-insurance premiums. However, we reverse the award of child support and remand for further consideration because the trial court failed to consider the information regarding appellee's income during the first quarter of 2003, as required by Administrative Order Number 10.

The parties were divorced in December 2001. Appellant is retired and receives social security income for himself and Lauren. He also owns stocks valued at approximately two million dollars. Appellee is a physician with her own family practice. In addition, she owns a chicken farm and numerous stocks. Appellant was initially awarded custody of Lauren, and appellee was ordered to pay child support of $132 per week and to pay an additional $85 per month for one-half of Lauren's health- and dental-insurance premiums.

After appellee's request for reconsideration was denied on December 12, 2001, she filed a motion to reduce her child-support obligation and to abate her obligation to pay insurance premiums. Appellant thereafter filed a motion for contempt for appellee's failure to pay any child support after the entry of the divorce decree.

The trial court held a hearing on both motions on July 7, 2003. The court reduced appellee's child-support obligation to $24.00 per week but did not abate her obligation to pay the insurance premiums. The court also found appellee to be in willful contempt for failure to pay support, but that finding is not appealed.

## I. Change of Circumstances

We first address appellant's argument that the trial court erred in reducing appellee's child-support obligation because there was no change in circumstances. Appellant argues that, because appellee sustained an income loss in 2001, an income loss in 2002, and predicted a loss in 2003, there was no "change" in her circumstances.

In reviewing domestic-relations cases, we consider the evidence *de novo*, but will not reverse a trial court's findings unless they are clearly erroneous or clearly against preponderance of evidence. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). Because it is assumed that the trial court correctly fixed the proper amount of child support in the divorce decree, the party seeking modification of child support must show a change in circumstances to warrant the modification. *Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993). In addition, Arkansas Code Annotated § 9-14-107(c) (Supp. 2003) provides that:

> An inconsistency between the existent child support award and the amount of child support that results from application of the family support chart shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions. . . .[1]

The divorce decree was entered on December 3, 2001, before appellee's income tax information for that year was available. The court noted that "it is very difficult at the present time to determine the disposable income available to [appellee] and that the Court has done the best it can with the information provided during the contested hearing on this subject." The trial court did not expressly indicate in the divorce order what it determined appellee's income to be or whether it deviated from the Family Support Chart in determining that child support should originally be set at $132.[2] Nonetheless, at the July 7, 2003 hearing, the trial court had before it appellee's unrebutted testimony that she experienced a loss from her medical practice in 2001. The court also had before it appellee's 2002 tax returns and other financial records, which indicated that she incurred considerable debt after the parties divorced to keep her businesses afloat and to pay credit card debt.

█ The Family Support Chart assumes a *positive* income, beginning at a net weekly income of $100 per week. Because the court had before it evidence that appellee had experienced *negative* income for the two years preceding the hearing, the amount of

---

[1] Section 9-14-107(c) contains exceptions that are not applicable in this case.

[2] The Child Support Chart sets $132 as the amount due to one child where the noncustodial parent has a net weekly income of $760.

child support she had been previously ordered to pay was inconsistent with her current negative income, pursuant to the Family Support Chart. This constituted a material change of circumstances. *See Alfano v. Alfano*, 77 Ark. App. 62, 72 S.W.3d 104 (2002). Accordingly, we affirm the trial court's finding on this point.

## II. Child Support

However, we reverse the award of child support and remand to the trial court for its redetermination. Appellant's argument that the trial court erred in reducing appellee's child support and appellee's arguments that the trial court erred in ordering her to pay any child support and in ordering her to pay one-half of the medical-insurance premiums may logically be addressed together. We agree that the trial court did not err in ordering appellee to pay child support and to pay insurance premiums.[3] However, we hold that the trial court erred in reducing appellee's child support obligation without considering estimates of appellee's income for the first quarter of 2003, as required by Administrative Rule Number 10.

Appellant argues that the trial court improperly disregarded the evidence that, during the first quarter of 2003, appellee had from $7,167.32 to $8,441.32 per month in income and that, at that level, child support should have been set at $250.02 weekly. Appellant also asserts that the trial court disregarded the fact that appellee could liquidate her stocks or continue to borrow against them, and ignored her farm income.

Appellee counters that appellant places the bulk of Lauren's social security check into a savings account on her behalf and that he had developed a trust account for her. Appellee maintains that appellant has assets in excess of two million dollars; whereas she is struggling to get her medical practice off the ground.

---

[3] Appellant attempts to raise credibility issues by directing us to examine appellee's "resources and her priorities with respect to the use of those resources," such as the fact that appellee purchased a tractor for her farm, but refused to pay child support. While we do not review such credibility issues on appellate review, the issues discussed by appellant regarding appellee's purchases are not only relevant as to whether appellee willfully failed to pay child support, but also probative with regard to the financial resources available to appellee to pay child support.

Appellee testified that her medical practice suffered a business loss in 2001. Based on her 2002 individual federal tax return, she also asserted that she suffered a $29,300 loss (after depreciation, reflecting the $49,083 loss for her farm). Appellee's stocks are valued at approximately $180,000. However, since the divorce, she has borrowed approximately $141,000 against her securities; her total estimated stock assets were valued by her broker at approximately $90,215. Thus, appellee testified that she was eligible to obtain $90,000 against these accounts. She also testified that she refinanced a loan with Portland Bank, receiving $50,000 that she used to pay credit cards; she owes nearly $600,000 on this loan. Appellee also owes approximately $150,000 in student loans. According to appellee's testimony at the hearing, during the first three months of 2003, her expenses totaled $39,238, while her "receipts" or the amount of money taken in by her medical practice totaled $64,561.98, which would leave her with a positive quarterly gross income of $25,323.98.[4]

The evidence also showed that appellant receives $1188 monthly from social security and that Lauren received approximately $700 monthly from social security. Appellant testified that Lauren did not lack for anything and that all of his income, including Lauren's, exceeded his monthly expenses by $300. Appellant explained that he owns 300 acres of land as a joint tenant with his brother, and that his two million dollars worth of stock came from the sales of timber from that land. Appellant also stated that the bulk of Lauren's social security check goes into a savings account for Lauren, which had a balance at the time of the hearing of approximately $15,000. Finally, appellant stated that he had also opened a trust account for Lauren that was worth approximately $75,000.

The trial court explained its findings in a letter order entered on July 14, 2003. The court first cited to that portion of Administrative Number 10, Section III(c), concerning child support guidelines, providing for self-employed payors that

> support shall be calculated on the last two years' federal and state income tax returns and on the quarterly estimates for the current year. A self-employed payor's income should include contribu-

---

[4] In contrast to her testimony at the hearing, appellee now argues that her expenses during this time period were actually $69,818.97. The figure of $39,238 includes nonrecurring expenses for her current husband's chemotherapy treatments.

tions made to retirement plans, alimony paid and self-employed health insurance paid. . . . Depreciation should be allowed as a deduction only to the extent that it reflects actual decrease in value of an asset. Also, a court shall consider the amount the payor is capable of earning or a net worth approach based on property, life style, etc.

The court further noted that:

[Appellee] only produced her 2002 tax return, but she testified a loss was incurred in 2001. She anticipates a loss in 2003, and therefore, quarterly estimates are not made. This Court has gone through the tax return and other financial information very carefully, and concludes that she had a negative income for 2001 and 2002 and will most likely have a loss in 2003. This is true even after adding back all depreciation. She will likely show a profit some time in the future, but she should not be saddled with a child support amount she obviously cannot make.

The farm loss was not considered because this is a business voluntarily conducted by her and she could opt out at any time.

Based on the above, child support is reduced to $24.00 per week retroactive to December 6, 2002.

It is apparent from the trial court's letter order that, in setting appellee's child-support obligation, the court did not consider appellee's quarterly income. The order entered on August 7, 2003, merely provided that appellee's child-support obligation was reduced to $24.00 per week (the minimum allowable under the child support chart, which reflects a weekly salary of $100) and that appellee's obligation to pay $85 for insurance premiums was continued.

We disagree with the notion that appellee should not be required to pay child support and health-insurance premiums because all of Lauren's needs are met. Although a trial court may deviate from the child-support chart where the chart exceeds or fails the needs of the child, *Ceola v. Burnham*, 84 Ark. App. 269, 139 S.W.3d 150 (2003), we have rejected the argument that a noncustodial parent is not required to pay the child support pursuant to the child support chart on the ground that the amount exceeds a child's actual needs. *Id*; *Williams v. Williams*, 82 Ark. App. 294, 108

S.W.3d 629 (2003); *and Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). Accordingly, we affirm the trial court's determination that appellee should pay child support and insurance premiums.

■ However, we reverse the trial court's award of child support and remand for a determination of the proper amount, which should include consideration of appellee's income from the first quarter of 2003. It is the ultimate task of the trial judge to determine the expendable income of a child support payor. *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). We will not reverse a trial court's determination of the award of child support absent an abuse of discretion. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001). All sources of a payor's income are to be included in determining the sum of a payor's income upon which the amount of child support is to be derived from the Family Support Chart. *Office of Child Support Enforcemt v. Longnecker*, 67 Ark. App. 215, 997 S.W.2d 445 (1999). In addition, the definition of income in Administrative Order Number 10 has been broadly interpreted to include the widest range of sources available for the support of the minor child. *McWhorter v. McWhorter, supra.* Further, a payor's income for child support purposes may differ from income for tax purposes. *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). The creation of a trust fund may warrant adjustments to the child support obligation. Administrative Order No. 10, § V(b)(3).

Income, for child support purposes, includes:

> any form of payment, *periodic or otherwise*, due to an individual, *regardless of source, including wages, salaries,* commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions for:
>
> 1. Federal and state income tax;
> 2. Withholding for Social Security (FICA), Medicare, and railroad retirement;
> 3. Medical insurance paid for dependant [sic] children, and
> 4. Presently paid support for other dependents by Court order.

Administrative Order No. 10, § II (emphasis added). It is an abuse of discretion for the trial court not to consider all sources of a payor's income. *Longnecker, supra.*

Because appellee's income fluctuated considerably from month to month, the trial court properly attempted to calculate

appellee's average monthly earnings. *Delacey v. Delacey*, 85 Ark App. 419, 155 S.W.3d 701 (2004). However, it is clear that the trial court improperly disregarded the information concerning appellee's income for the first quarter of 2003. The court stated, "She [appellee] anticipates a loss in 2003, and therefore, quarterly estimates are not made." The trial court's disregard of appellee's quarterly income was in error, first, because Administrative Order Number 10 expressly requires it.

■ Second, this is not a matter of witness credibility. No matter how sincere appellee was in testifying that she would experience a loss in 2003, her testimony was speculative and contrary to the information regarding her expenses and receipts during the first quarter of 2003. Therefore, we reverse the award of child support and remand for the trial court to determine appellee's child support obligation, taking into consideration appellee's income for the first quarter of 2003.

Because we reverse on this ground, we do not reach the issue of whether the trial court failed to consider appellee's other resources. We recognize that, upon remand, the trial court may consider appellee's other resources.

Affirmed in part; reversed and remanded in part.

GLADWIN, ROBBINS, GLOVER, NEAL and ROAF, JJ., agree.

CRABTREE, J., concurs.

HART and BAKER, JJ., dissent.

TERRY CRABTREE, Judge, concurring. Although I agree with the majority's decision, I write separately to point out to the trial court that it should take into account specific considerations before determining appellee's child-support obligation. I am troubled by the idea that a physician who has a substantial retirement account, twenty-six horses, a chicken farm, and a medical practice is required to pay a negligible amount of child support.

The majority opinion states that the trial court *may* consider appellee's other resources in reaching its decision. However, I am convinced that the trial court *must* consider appellee's other resources, including her securities along with the equity in the farming operation and her medical practice. *See Office of Child Support Enforcement v. Longnecker*, 67 Ark. App. 215, 997 S.W.2d 445 (1999). The supreme court and this court have interpreted

"income" broadly for purposes of arriving at a proper amount of child support. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001); *Longnecker, supra*. Moreover, the trial court is instructed to consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc. *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. Appx. 581 (1998).

The trial court should acknowledge that appellee has funds to maintain and operate her farming endeavors. Recently, appellee even purchased a new tractor for her farm. I recognize that farming requires a large amount of funding to operate on a monthly basis. How is it that appellee can find sufficient funds to feed her chickens and twenty-six horses but not her daughter? I believe that the circuit court should look to the chicken and horse operations and review its expenses and profits carefully. In addition, the trial court should closely examine appellee's $90,000 securities and the equity in her medical practice. Without considering each and every resource available to appellee, the trial court cannot adequately determine how much child support appellee is obligated to pay. Accordingly, I expect the trial court to examine each upon remand.

KAREN R. BAKER, Judge, dissenting. I agree with the majority that the child-support guidelines expressly provide that, in setting child support, the trial judge must consider the last two years' tax returns and the quarterly estimates for the current year. However, I cannot agree with the majority's holding that the trial judge failed to consider the income from appellee's medical practice for the first three months of 2003. As the judge's findings of fact demonstrate, he did in fact consider it. He stated that, because appellee anticipated a loss in 2003, no quarterly estimates had been made, and that, after reviewing the 2002 tax return and "other financial information" very carefully, he concluded that appellee would "most likely have a loss in 2003." Whether such a loss was likely was a finding of fact for the trial judge to make, and the amount of child support to award, in light of all relevant facts and the applicable law, lay within his sound discretion. I can only conclude, therefore, that the majority is reversing the trial judge's factual determination that appellee had no income by saying that the trial judge made an error of law. Because I believe that his factual findings are not clearly erroneous and that he followed the law, I must dissent.

HART, J., joins.